# FRANK L. SPITZER

*vs.*

## JOHN T. MARTIN, MAYOR OF BRUNSWICK.

*Legislative bodies*: *judges of qualification of members; court's
jurisdiction; mandamus as to ministerial duties; certifi-
cation of election; administration of oath to mem-
ber.  Public office*: *property qualification;
minimum of tax assessment and
taxes paid.*

In general, a legislative body is the sole judge of questions
relating to the election and qualification of its members.  p. 431

But in a mandamus proceeding to require the Mayor of a
municipal corporation to perform the merely ministerial duty
(under the Charter) of administering the oath of office to one
claiming to have been elected to the Town Council, it was:
*Held,* that the Circuit Court had full jurisdiction to consider
and decide the petition.                          pp. 431-432

The action of the Court thereon would not, however, inter-
fere with any rights of the Council based upon the question of
the admission of the complainant as a member.        p. 431

Where the charter of a municipal corporation fixed at 21
years the minimum age qualification for membership in the
Town Council, the date for determining the qualification is
the date of the election.                          p. 433

Where there is a property qualification for eligibility to office, prescribing a minimum amount of property with which a candidate must be assessed on the tax books and upon which he must have paid taxes for two years preceding the election, property in which the candidate has merely a reversionary interest is not to be considered; and such tax qualification is not gratified by the fact that someone else paid the taxes upon the property which he owns if the property was not assessed on the books in his name.                                                  pp. 434-435

Where the qualification for public office prescribed by the Charter of a municipal corporation declares what official shall certify to the election of a candidate, the certification by any other official is of no avail.                                                  p. 436

*Decided March 13th, 1917.*

Appeal from the Circuit Court for Frederick County. (URNER, C. J., PETER and WORTHINGTON, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, STOCKBRIDGE and CONSTABLE, JJ.

*Leo Weinberg,* for the appellant.

*Jacob Rohrback,* for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

The Legislature of 1916 by Chapter 456 adopted extensive amendments to the Charter of Brunswick. The effect of the Act was to provide the entire machinery for the government of the corporation, and the holding of the elections to put the Act into full operation and effect.

Among these was one for the holding of an election on the first Monday of August, 1916 (August the seventh), at which were to be elected three councilmen, one from each of the wards into which the town was divided. At that election Frank L. Spitzer and George W. Nuce were opposing candidates for the office of councilman from the Third Ward, and the former received a plurality of the votes cast. What purported to be a certificate of election was issued to Spitzer by Jacob H. Fry, clerk to the Mayor and City Council.

By the terms of the Charter the newly elected members of the Council, and those who held over until 1917, were to meet for the first session of the newly constituted body on September 5th, 1916. At twenty minutes before eight on the evening of that day, Mr. Spitzer filed a petition for mandamus in the Circuit Court for Frederick County, in which after setting forth the provisions of the Act of 1916, he alleged that John T. Martin, the Mayor of Brunswick, will not permit him, the petitioner, to take the oath of office when the Council convenes at eight o'clock, and the prayer of the petition was for a peremptory writ of mandamus to compel the administration of the oath to the petitioner.

An order *nisi* was signed upon the presentation of the petition, requiring the Mayor to answer the allegations by the 15th of September, and on this latter date the answer of the Mayor was filed. The answer departed from the usually recognized canons of pleading in mandamus cases in not being definite and specific with regard to a number of the allegations, but the petitioner did not demur to portions of the answer, as he might have done.

From this point the pleadings were those customary in an equity case, rather than those appropriate to an action of mandamus. No objection has been raised by either party to this appeal on the ground of the form of the pleadings, and apparently none was interposed below, so that this Court is constrained to take the case as it finds it.

Evidence was taken tending to bear on the eligibility of Mr. Spitzer as a member of the Council, and that question and the jurisdiction of the Court to entertain the case are the two issues now to be passed on.

These both present questions of law, and neither is of any special difficulty. Logically they should be considered in the inverse order from that just stated. The objection on the ground of lack of jurisdiction is sought to be based on two grounds—first, that the Council, being a legislative body, is of necessity the sole judge of the election and qualifications of its members; and, in the second place, that inasmuch as the remedy is given in section 6 of the Act to anyone feeling aggrieved, that provision of necessity excludes resort being had to any other form of remedy.

The Act of 1916, in providing for a Council for Brunswick, does not contain the customary provision making such body the judge of the election and qualifications of its members, but apart from this omission there are numerous cases which hold that in every legislative body that body is the sole judge of these questions.

This proceeding in no manner interfered with that right, if it be assumed to have existed. The petition sought only to have the Mayor of Brunswick perform that which was a purely ministerial duty, and the performance or non-performance of which could in no manner interfere with the power of the Council to inquire into and pass upon the election and qualifications of its members. The remedy given by the Act in certain cases is contained in Section 6, where it is provided that:

> "The Council shall receive all election returns, and determine all questions arising thereon, and any person conceiving himself aggrieved by reason of such decision may appeal to the Circuit Court for Frederick County, which shall hear and determine the same and determine who shall pay the costs of appeal."

This manifestly applies to questions arising out of the
conduct of the election which may affect the validity of it,
and the appeal there given from the action of the Council was
an entirely different matter from that involved in the peti-
tion to compel the executive officer of the town to perform a
ministerial act. As has already been said, the petition in
this case was filed some twenty minutes before the Council
met, at which time there was no action from which any ap-
peal would lie, and the prayer of the petition looked to an
entirely different relief from that which was covered by the
provision of section 6, already quoted.

The case in this State most nearly approaching this aspect
of the present case is *Covington* v. *Buffett,* 90 Md. 578, 47
L. R. A. 623. In that case the Court was asked not merely
to issue a mandamus to compel the Supervisors of Elections
to place a name on the ticket, but also to create a vacancy by
declaring that a member of the State Senate, by reason of
having accepted another office, had vacated his position as a
member of the Maryland Senate. In that case the Court
declined to entertain the application, because of the consti-
tutional provision by which the Senate is made the judge of
the election and qualifications of its members. It was, there-
fore, for the Senate, and not for the Court, to determine
whether a vacancy had been created and was then existing,
which was preliminary to any election being held. That
case is, therefore, readily distinguishable from the present
one.

The question of the jurisdiction of the courts in such cases
was elaborately considered in *Sherwood* v. *State Board of
Canvassers,* 129 N. Y. 360, 14 L. R. A. 646, and the juris-
diction was amply sustained, the Court saying, in effect, that
it was not precluded by a constitutional provision making
each branch of the Legislature the judge of elections, returns
and qualifications of its own members, from declaring as a
basis for refusing its aid to an applicant for a writ of man-
damus, to compel a canvassing board to give him a certificate

of election, that he is ineligible for the office, when the facts showing the eligibility are undisputed, and the principle so laid down is adopted as the established rule of law in 9 *R. C. L.* 1021.

No doubt whatever is entertained, therefore, that the Circuit Court for Frederick County was possessed of full jurisdiction to inquire into the case as presented to it by Mr. Spitzer's petition.

In the *per curiam* filed immediately at the conclusion of the argument, this Court indicated that in its view Mr. Spitzer was ineligible under the provisions of Chapter 456 of the Acts of 1916, for membership in the Council of Brunswick. The qualifications prescribed in the Act for a Councilman are that

"Each shall be at least twenty-one years of age, a citizen of the United States, and for two years next preceding his election a resident of said town, and assessed with property in said town to the amount of $500, and shall have paid taxes thereon two years preceding his election."

The evidence taken relates to the qualifications of Mr. Spitzer under the language quoted. His eligibility must be determined as of the date of the election, not a subsequent date. *People v. Purdy,* 47 N. Y. S. 601. There is no dispute upon the question of fact affecting this branch of the case, and those facts are: In the year 1913 Mr. Spitzer had purchased the equipment of the Imperial Theatre in Brunswick, and thereafter had paid the taxes upon it. This property was assessed as of the value of $400. Though purchased by Mr. Spitzer in 1913, the assessment was not transferred to him upon the tax books until the year 1916. This property, therefore, failed to gratify the requirements of the Act so as to qualify Mr. Spitzer for membership in the Council— first, because of deficiency in value; and, secondly, because there was no legal liability, by reason of the assessment of it

in the name of another, which attached to Mr. Spitzer for the payment of the taxes thereon.

The main reliance as complying with the property quali-fication required by the statute is placed upon the interest of Mr. Spitzer in the estate of his father. Mr. A. R. Spitzer, the father of the petitioner, was the owner of property in Brunswick of an approximate value of $5,000. He died on the 8th of September, 1914; and the election at which Frank L. Spitzer claims to have been elected to the Council took place on the 7th of August, 1916, so that the election under which Mr. Spitzer claims to have been chosen took place one month less than two years from the death of his father.

By the terms of the will of Mr. A. R. Spitzer, his property was devised to his wife for life, or during her widowhood, with a remainder over to Frank L. Spitzer. There is no pretense that Mr. A. R. Spitzer's property was ever assessed to Frank L. Spitzer. What is claimed is that, after Mr. A. R. Spitzer's death the taxes upon it were paid by Frank L. Spitzer for one year, and on a portion of the property another year; that the property which had previously been assessed to Mr. A. R. Spitzer was subsequently assessed to his estate, and that by reason of the fact that Mr. Frank A. Spitzer took a vested interest in remainder under the will of A. R. Spitzer, that the case falls within the rule laid down by this Court in *Vanneman* v. *Pusey*, 93 Md. 686. In that case the Court had occasion to consider whether a property qualification, required to constitute eligibility for office, was gratified by the assessment of taxes to a partnership, where the question of eligibility related to one of the partners, and it was there held that it did, because of the fact that not only did each of the partners have an interest in the property, but that each was *severally* liable as well as jointly for the pay-ment of those taxes, even though the assessment stood in the name of the firm.

It is true that a life tenant and remainderman have each an interest in the same property, which is of value and which either of them may sell and dispose of, but it has long been the accepted law of this State that the remainderman is under no legal liability for the payment of the taxes; that obligation rests upon the life tenant, who is entitled to the present enjoyment, and the fact that someone else, even the remainderman, intervened and paid the same, can in no way alter or affect the respective rights or liabilities of the parties.

There has been an evident disposition in some of the Western States, growing out of peculiar local conditions, to ameliorate as far as possible this rule, in the interest of qualifying individuals for office. These cases will be found collected in 28 *Cyc.* 415; but none of them go to the length that this Court is now asked to, and hold that for such a purpose established legal rights and liabilities are to be set aside.

The property of Mr. A. R. Spitzer was properly assessed to his estate following his death; the interest of Mr. Frank A. Spitzer in it was necessarily problematic for some time thereafter. The inventory was not returned until the 7th of December, 1914, and the account was not passed in his estate until July 19th, 1916. Until the passage of that account it was, of course, possible that the personal estate of Mr. Spitzer would be insufficient to pay the claims of his creditors, and they would have been entitled in such a contingency to recourse against his real property. If this had occurred, the value of the remainder interest of Mr. Frank L. Spitzer might have been materially affected, or even extinguished, and the assessment of the property to him would have been improper, both because of the legal liability of the life tenant for the taxes and the impossibility of any proper or just valuation of his interest in it.

There is one additional fact which can not be passed over without comment. On August 22nd, 1916, Mr. Jacob H. Fry, clerk of the Mayor and City Council of Brunswick,

issued a paper to Mr. Spitzer purporting to have been a certificate of his election.  This could not confer any right upon Mr. Spitzer.  The Act of 1916 made no provision for any such certificate; it was the voluntary act of Mr. Fry, done without legal authority, and no legal right could be derived therefrom.  Section 4 of the Act provides for the returns from any election, and that provision is, that the judges of election shall make out a certificate at the conclusion of the count of the ballot, which certificate shall state "the person receiving the highest number of votes cast for a councilman in each ward is elected councilman from that ward," and the certificate so provided for is to be returned by the judges to the town clerk.  This is the only provision which the Act makes for the certifying of an election, and no aid or comfort can, therefore, be derived from what purported to be a certificate issued by the town clerk.

It was for the reasons above given that in the *per curiam* heretofore filed the order dismissing the petition for the writ of mandamus was affirmed.

*Costs to the Appellee.*