# BALTIMORE CITY COURT.

Filed July 13, 1927.

MORTIMER W. WEST AND PHILIP J. SCHECK, PETITIONERS,

VS.

J. WARREN BURGESS, DEFENDANT.

MORTIMER W. WEST AND HARRY J. McCLELLAN, PETITIONERS.

VS.

THOMAS L. A. MUSGRAVE, DEFENDANT.

*Isaac Lobe Straus* and *Edgar Allan Poe* for petitioners.

*Roland R. Marchant, Simon E. Sobeloff, Enos S. Stockbridge, William M. Kerr* and *Daniel Ellison* for defendants.

OWENS, FRANK and STANTON, JJ.—

(The Court) The two cases present the same legal propositions, based upon substantially the same facts, and are presented upon the same state of the pleadings.

The facts as stated in said petitions, as far as necessary to be here set out, are these:

J. Warren Burgess, and Thomas L. A. Musgrave were elected members of the City Council of Baltimore at the election held in this city on May 3rd, 1927, the former was elected from the 3rd Councilmanic District, and the latter from the 5th Councilmanic District of the city.

The City Charter requires, among other qualifications, that the members of the Council, representing the Councilmanic Districts, shall each be assessed with property to the amount of $300, on which the taxes have been

paid by the Councilman one year prior to his election. City Charter, Sec. 210.

The petitioners in each case are Mr. Mortimer W. West and a defeated candidate in each of the two Councilmanic Districts, who file the petitions as citizens of Baltimore and voters and taxpayers in said city.

In each petition it is alleged, Paragraph 3: "That the defendant at the time of said municipal election was not assessed with property upon the tax books of said city in the amount of three hundred dollars or in any amount whatsoever upon which he had paid one year prior to said election and therefore did not possess the qualifications prescribed by Section 210 of said Charter of Baltimore City for membership to said Council and was therefore at the time of said election not eligible as a member of said Council.

That notwithstanding such disqualification and ineligibilty the defendant claiming to have been elected at said Municipal Election held on May 3, 1927, as a member of said City Council on Thursday, May 14th, 1927, presented himself to Honorable William F. Broening, Mayor of Baltimore City, who thereupon administered to him the oath required to be taken by members of said City Council and thereupon the said defendant took his seat as a member of said City Council, and since that time, has attempted to act, and has acted as a member thereof and has declared his intention of continuing to so act.

Paragraph 4: "That at a session of the City Council on June 6th, 1927, the City Council by a vote of 11 to 8 held that the defendant was duly qualified according to law and was entitled to his seat as a member of the City Council, and your petitioners feeling aggrieved by said finding and decision have brought this proceeding in order that the alleged disqualification of the defendant may be judicially inquired into and determined."

And the petitioners in each case pray:

"That a writ of mandamus may be issued directed to the defendant commanding him to vacate the office of Councilman of the City of Baltimore and to cease from exercising any of the functions of said office."

The petitions in each case are filed under oath.

A demurrer, verified by affidavit, is filed by the defendant in each case, worded as follows:

"The respondent in the above entitled cause demurs to the whole of the petition herein filed and for ground of demurrer says: That the same is bad in substance and insufficient in law, and for further ground says that the facts set out in said petition do not entitle the petitioner to the issuance of the writ of mandamus as herein prayed. The specific point presented is as follows: Section 217 of the present City Charter contains this provision: "The City Council shall judge of the election and qualifications of its members subject to appeal by petition of the party aggrieved to the Baltimore City Court."

It is contended by the defendants that this provision of the City Charter provides a specific and adequate remedy for the conditions complained of in the petitions and therefore mandamus will not lie.

The procedure in mandamus cases is set out in detail in Article 60 of the Annotated Code of Maryland and it is provided specifically that the Defendant shall answer the petition and there is no express authority for a demurrer to the petition, and our Court of Appeals, in Sudler vs. Lankford, 82 Md. 148, and Beasley vs. Ridout, 94 Md. 641, say that in a purely statutory procedure such as has been provided by our Code for Mandamus, a demurrer does not admit the facts alleged in the petition.

In the cases at bar, however, the demurrers rely upon the written law as contained in the City Charter, and practically assert that the law controls the situation, independently of a denial of the facts alleged in the petitions.

And the demurrers filed in these cases were apparently recognized by both sides to be the appropriate pleading and the Court, therefore, so accepts it.

The petitioners contend, under the authority of Hammelshime vs. Hirsh, 114 Md. 59, that mandamus is the appropriate remedy, and if this is not so, and an appeal to the Baltimore City Court is the appropriate proceeding the petitions filed herein are of such a character that the Court may properly consider them as the "Appeal by Petition," provided for by Section 217,

of the City Charter. This second contention clearly can not be sustained by authority.

The proceeding by mandamus is of common law origin, and at the beginning was a voluntary exercise of kingly power, arising from his innate sense of justice, in cases in which the subject possessed an undoubted right for the enforcement of which there existed no legal machinery. After the establishment of the Court of King's Bench, in which, in theory, the king presided, jurisdiction in mandamus cases was vested in that tribunal, and in full keeping with the origin of the proceeding, from the beginning of regulated Court procedure, it was established as a fundamental proposition regarding mandamus that it was a prerogative writ, issuable only in cases where there was no other adequate remedy.

The Maryland Colonists brought with them the Common Law of England, and during the Colonial period the Common Law of England was the basis of the law of the land. Mandamus was even then a recognized Common Law procedure. As far back as 1709 our Provincial Court had before it the Mandamus Case of Bordley vs. Lloyd, which is reported in 1st Harris & McHenry, at page 21.

When the Colony became a State, it was set out in the Declaration of Rights: "That the inhabitants of Maryland are entitled to the Common Law of England, and the trial by jury according to the course of that law and to the benefit of such of the English Statutes as existed on the 4th day of July, 1776, and which by experience have been found applicable, to their local and other circumstances, and been introduced, used and practiced by the Courts of Law and Equity." And so from the earliest days of the State Government, the Writ of Mandamus was in use, whenever the occasion required its use, in fact, in our Maryland Reports there are a great number of mandamus cases, from the case of Runkel and Winemiller, 4 Harris & McHenry, down to the present time, and it has always been conceded in this State that the underlying rule with reference to mandamus is that the writ will not be issued when there exists another specific and adequate remedy.

It, therefore, becomes necessary to consider whether or not the remedy provided by Section 217 of the City Charter is a specific and adequate remedy under the circumstances presented by the petitions.

The City of Baltimore is the metropolis of the State. Within its ninety-six square miles of territory more than one-half of the entire population of this State lives and conducts its life's work. Estimating its population at 800,000 in this restricted area, there are living more than 8,000 people to the square mile. It is manifest that the government of a population so congested presents problems infinitely more intricate and of an entirely different character than those presented with reference to the outlying sections of the State, where the average density of population does not exceed 75 to the square mile. As far back as the Constitution of 1851, Baltimore was taken out of Baltimore County, and made a separate political entity. In the Constitution of 1867, a special Article was contained applicable to Baltimore City, giving it large self-governing powers, but still retaining to the State in most particulars the ultimate control of the Municipal Government.

The constantly increasing population of the city, made evident the necessity of a more effective autonomy, and after continued demands upon the Legislature, Article 11A of the State Constitution was passed by the Legislature and approved by the people of the State in November, 1915. Under this Article the City of Baltimore was authorized by a vote of its people to adopt a charter. This was done in 1918, and our Court of Appeals has upheld this Charter. This Charter was amended in many particulars by a vote of our people on November 7th, 1922, and among these amendments, the City Council was made to consist of a single branch instead of the two branches as theretofore existing.

Section 210 and 217 of this amendment are the Sections under consideration, the former prescribing the qualifications of the councilman, and the latter containing the provisions now to be construed "The City Council shall judge of the election and qualification of its members, subject to appeal by petition of the party aggrieved to the Baltimore City Court."

Bearing upon the construction to be placed upon the Charter of Baltimore City, as amended, attention should be called to the fact that Section 4 of Article 11A of the State Constitution provides "that from and after the

adoption of this Charter by the City of Baltimore" no public local law shall be enacted by the General Assembly for said city on any subject covered by the express powers granted by said Amendment, 11A.

Section 217, as heretofore stated, provides that the City Council shall judge of the election and qualification of its members, subject to appeal to the Baltimore City Court. Somewhat similar language appears in most of the State Constitutions with reference to the powers of the State Legislatures. In the Constitution of the United States the form of this grant of power is as follows: "Each house shall be judge of the elections, returns and qualifications of its own members."

Section 5, of our State Constitution has the same power in this form: "Each house shall be judge of the qualifications and elections of its members, as prescribed by the Constitution and Laws of this State."

No question would now be raised that this grant of power to the Congress of the United States, and to the Legislature of our own State is subject to judicial control.

But when the people of this City, acting under the authority of the Constitution of the State, came to the consideration of the qualification of their Councilmen and the method of securing a council of qualified men, they fully realized two things: That the law making body of this city must be composed of men who had a share in the community, and if one was selected who lacked that qualification that there should be a sure and speedy way to get rid of such disqualified person, and the best way to do this appeared to them to be to leave the final determination of this question to our local Courts in such manner as to prevent the delays incident to protracted litigation. The ability promptly to exercise a power in cases such as are here presented, is as valuable as the existence of the power. This plan carried forward as the peoeple understood it—the principle of complete autonomy. To leave the matter subject entirely to the determination of the council might defeat the very purpose of prescribing qualifications for our councilmen, but to let the matter be primarily determined by that body, subject to the control of the Courts, was eminently safe and eminently effective.

The appeal provided is by petition of the party aggrieved to the Baltimore City Court. This is a simple and effective remedy.

As an answer to the suggestion that when Section 217 was framed the draftsman had only in mind a simple election contest, and that the words "party aggrieved" mean the defeated person in such contest, attention is called to the fact that Section 217 of the City Charter provides that the Council shall judge the *election* and *qualifications* of its members and gives the right of appeal by petition to "the party aggrieved." Two classes of cases are here involved. First, a disputed election and, second, the question of the qualifications of members returned as elected. In the first class of cases the contest would evidently be between the elected and defeated candidate, and the unsuccessful contestant would clearly be "the party aggrieved." In the case of a dispute over the qualifications of a member returned as elected, no question of the number of votes cast being involved, the defeated candidate, as such, obviously would have no special right involved. Regardless of the result of the controversy, he would not be affected as a defeated candidate. His only interest in the result would be that of any other tax payer and citizen. In such a controversy, he could not be held to be "the party aggrieved" as a defeated candidate, regardless of the outcome of the controversy. In this class of cases, it is clear that "the party aggrieved" must be a tax payer and citizen generally. The conclusion, therefore, is inescapable that in the sort of controversy involved in the pending proceeding "the party aggrieved" must be a tax payer. A fair construction of the language makes it sufficiently broad to cover all the situations that might arise. It could not be supposed that the people intended that the City Council should pass upon an election contest that might require a recount of the ballots of an entire district and, at the same time, be denied the power to bring the City Tax Collector and the requisite books before it which are housed in the same building in which the council meets, and ascertain from him and his books whether or not a certain man is assessed for $300 worth of property and if his taxes for the past year are paid. That a taxpayer in Baltimore City is "the party aggrieved" within the prop-

er construction of this provision seems clear from the opinion of the late Judge Thomas in the Hummelshime case, to which reference has hereinbefore been made, and also from the matter of the Appeal of John T. Cottrell and others reported in 10 Rhode Island at page 615.

The distinction between the case at Bar and the Hummelshime case, upon which the petitioners rely, consists primarily in the fact that the City Council in that case refused to consider the protest made to it, and also there was no such specific grant of power to it, as is given to the City Council of Baltimore by Section 217 of the Charter.

If in his case the City Council had refused to consider the matter a different situation than the one here presented would have arisen, but it did consider the eligibility of the defendants and it did decide they are both eligible, and the right of appeal to the Baltimore City Court is still open and can be availed of by these petitioners.

Looking at the matter from another point of view, attention is called to the fact that the case of Spitzer vs. Martin, 130 Md. 428, is authority for the statement that when the defendants presented their credentials to the Mayor of the city, even if he knew, as alleged in the petitions, that they did not possess the requisite qualification, it was incumbent upon him to administer the oath of office mentioned in the petition, and had he refused mandamus would have been the appropriate remedy to compel him to administer the said oath.

Had the mandamus petition been filed between the time of the administration of the oath by the Mayor and the meeting of the City Council, seeking to restrain that body from admitting the defendants as members of the City Council, it seems perfectly obvious that the answer of the City Council would have been: Such proceeding is premature because the City Council has the right to pass upon the qualifications of its members, as provided by Section 217 of the City Charter, subject to the right of appeal to Baltimore City Court.

If this is so, it is apparent that after the City Council has done its part by passing upon the qualifications of the defendants, that the equally efficacious answer now to be made is that the time has not arrived for the issuance of the writ of mandamus, assuming, but not deciding, that such a proceeding is necessary, because there yet remains to be taken the deciding step authorized by the City Charter, and this proceeding intercepts the orderly and regular proceeding provided for in Section 217.

The Court, therefore, holds: That the provisions contained in Section 217, regarding the determination of the qualifications of Councilmen, furnishes a specific and adequate remedy in the situation set out in the petitions, and for that reason mandamus does not lie. An order will be signed sustaining the demurrer filed in each case and dismissing the petitions.

It only remains to say that this decision does not determine in any manner the rights of the respective parties in these cases. It only determines the regular and orderly procedure thereto applicable.

The Court calls the attention of the counsel on both sides to the fact that our Courts, notwithstanding the summer recess, are capable of functioning to the full extent of their jurisdiction, and a jury is at all times available. Therefore, should the determination of this Court be accepted, arrangements may be made for the immediate hearing of the matters involved on appeal to the Baltimore City Court.

The Court feels it is but due counsel to say that these cases were presented on both sides not only with zeal but with great ability and eloquence. The Bar is, indeed, to be congratulated that it can call from its midst upon such short notice so many men who stand, and are entitled to stand, in the front ranks of the profession.