# BALTIMORE CITY COURT.

Filed January 20, 1928.

IN THE MATTER OF THE FIVE COUNCILMANIC APPEALS.

*Edgar Allan Poe* and *Isaac Lobe Straus* for petitioners Charles J. Murphy and William Miller Mullen; *Roland R. Marchant, Enos S. Stockbridge, Simon E. Sobeloff* and *William M. Carr* for defendants Thomas L. A. Musgrave and J. Warren Burgess; *Roland R. Marchant, Enos S. Stockbridge* and *Simon E. Sobeloff* for petitioners Henry Dusch and John Bauersfeld; *Willis R. Jones* for defendant Philander B. Briscoe; *Robert R. Carman* for defendant James B. Blake, and *William Curran* for defendant Frank J. Bauer.

OWENS, STANTON and FRANK, JJ.—

We have for determination five appeals by citizens and taxpayers of Baltimore City from the action of the City Council of Baltimore City in determining by formal resolution that each of the five Councilmen, whose qualifications are attacked herein possess the qualifications for office as prescribed by Section 210 of the Baltimore City Charter. That the proceeding, by way of appeal to the Baltimore City Court, is the proper and sole procedure under the provisions of Section 217 of the City Charter, has been finally determined by the decision of the Court of Appeals in the recent case of West vs. Musgrave, filed December 8th, 1927,

and reported in The Daily Record of December 16th, 1927.

At the threshold of our consideration of the appeals, we are confronted with the contention, based upon undisputed facts, that not one of the five petitioners in the respective appeals has ever in any manner made himself a party to any proceeding in the City Council. The action of the Council in approving the qualifications of the five members had been entirely sua sponte and not one of the petitioners had in any manner appeared in the Council to contest or question its action. It is urged, therefore, that the petitioners are not "aggrieved parties" within the meaning of Section 217 of the City Charter, which makes the Council "judge of the election and qualifications of its own members, subject to appeal by petition of the party aggrieved to the Baltimore City Court."

Authorities have been cited from out of the State, in which it has been held that a person does not become an "aggrieved party" for the purpose of appeal, unless he has in some manner intervened in the tribunal of the first instance. Most of these cases are cases of formal Court proceedings. Some of the cases, however, are cases of appeal from the decision of merely quasi judicial bodies, such as board of county commissioners, of election supervisors, of school commissioners, police boards, etc. There is some authority for the contrary contention. What is the attitude of the Maryland courts with respect to this question? No decision completely in point has been cited to us, nor have we been able to find any. We do find, however, interesting analogies. One of these appears in the provisions of the law for appeals from the Orphans' Court of this State. These courts, of course, are judicial tribunals and exercise judicial functions. They have, however, always been looked upon as the courts of the people, and are conducted with a great deal of informality. Thus, technically speaking, according to the principles of common law and equity pleading, there are no formal parties or pleadings. Bagby's Maryland Law of Executors and Administrators, page 223, Section 147. In this respect at least their procedure might be likened to that of the City Council in passing on the qualifications of its members under its Charter power. The provision of the law with respect to appeals from the decisions of

the Orphans' Court is to be found in the Code, Article 5, Section 64, as follows:

"From all decrees, orders, decisions and judgments made by the Orphans' Court, the party who may deem himself aggrieved by such decree, etc., may appeal to the Court, of Appeals."

It is interesting to compare this language with the language of Section 217 of the Charter. This latter provides that "the City Council shall judge of the election and qualification of its own members, subject to appeal by petition of the party aggrieved to the Baltimore City Court."

The only difference in the description of the party entitled to appeal is that in the case of the Orphans' Court that party is described as "the party who may deem himself aggrieved," while in Section 217, the appeal is given to "the party aggrieved." We do not think that any real difference is worked by the use of the words "who may deem himself aggrieved," rather than merely the word "aggrieved."

The term "party" in Article 5, Section 64, is not used in a technical sense. In consideration of the peculiar character of the jurisdiction of the Orphans' Court, of the informal nature of the proceedings therein and of the fact that it often acts ex parte, it means any one against whose interests or rights the Court's action directly tends to operate injuriously.

Bagby: Executors and Administrators, p. 261, Sec. 170.

The appellate Court hears the appeal on the record of the case below, transmitted by the Register of Wills, Code, Art. 5, Sec. 1.

The party aggrieved may have appeared in the Orphans' Court. His order for the appeal must, of course, be filed in that Court in order that it may send its record up to the Court of Appeals.

In Stevenson vs. Schriver, 9 G. & J. 324, 335, the terms "party," it was held, "is not used in a technical sense, *necessarily importing a litigant before the Court* in the proceedings in which the decree *or order was passed, at the time or antecedently to its passage;* but may also mean one on whose interest the decree or order has a direct tendency to operate injuriously, and who, *after the passage,* may appear in Court

and claim the privilege of appeal." (Italics supplied.)

In Dorsey vs. Warfield, 7 Md. 65, the appeal from the order of the Orphans' Court was taken by Rebecca H. Dorsey, one of the legatees under the will of Fielder Warfield. The order revoked and annulled the probate of the will and annulled letters previously granted Kitty Warfield. It does not appear that Rebecca was a party to these proceedings, but the Court of Appeals held that there could be no question as to her right of appeal as she was "directly interested in the decision of the Orphans' Court."

The test of the right to appeal is not the presence of the appellant in the proceedings of the Orphans' Court, but the injurious effect on his interests of the action of that Court. Hopper vs. Stonestreet, 6 Md. 303; Gunther vs. State, 31 Md. 21, 23; Cecil vs. Cecil, 19 Md. 72, 77; Meyer vs. Henderson, 88 Md. 585, 590.

In Wingert vs. Albert, 127 Md. 80, 84, the administrators had not been made parties to the petition for the removal of the appraisers. The administrators' appeal was dismissed solely on the ground that they had not been injured by the rulings of the Orphans' Court. No point was made of the fact that the administrators had not been parties in the lower Court.

The Code requires the order for the appeal from the Orphans' Court to be filed with the Register of Wills. No similar provision of the City Charter requires an order of appeal to be filed with the City Council. On the contrary, the appeal is to be "by petition of the party aggrieved to the Baltimore City Court." This requirement would seem to relieve the appellants here from any need to appear for any purpose in the City Council, unless such an appearance is necessary to make them parties aggrieved. That we find not to be necessary. By analogy to the law governing appeals from the Orphans' Court, a party aggrieved is any one on whose interest the action of the City Council has a direct tendency to operate injuriously. That the petitioners herein, taxpayers of Baltimore City, have such interest is not open to question. Hummelshime vs. Hirsch, 114 Md. 39, 51 and fol.; West vs. Musgrave, Court of Appeals of Md., filed Dec. 8, 1927, Daily Record, Dec. 16, 1927.

Appeals to the Baltimore City Court from the action of various quasi-judicial bodies are provided for by statute. From the Appeal Tax Court by "any person * * * claiming to be aggrieved." Art. 81, Sec. 24. A similar provision exists with respect to the counties. Art. 81, Sec. 25. Appeals may be taken from decisions of the State Tax Commission. Art. 81, Sec. 253. The assessments of damages and benefits by the Commissioners for Opening Streets of Baltimore City are reviewable on appeal. City Charter (1927), Sec. 179. In none of these cases has it ever been suggested, so far as we know, that, before appealing, the dissatisfied or aggrieved party was required to appear in the lower tribunal. His right to appeal has been considered as arising from the doing of the act or the making of the decision affecting his interests. These cases furnish striking analogies to the question now before us, and not improbably were in the minds of the framers of Section 217 of the City Charter.

Our conclusion thus is that each of the petitioners was entitled to take his respective appeal, and that this Court has full and ample power to consider and decide the same.

---

Let us take up the consideration of the five cases seriatim.

### Case of Frank J. Bauer.

The question to be determined in this case is whether Frank J. Bauer was assessed for $300 worth of property, in the manner required by law, when on May 3, 1927, he was elected to the City Council, and, if so, had he paid taxes on the same one year prior to his election.

Two things are relied upon as gratifying the Charter requirements to qualify the defendant for membership in the City Council.

(1) The payment of taxes on property No. 734 W. Baltimore street, as to which he testifies he contributed one-third of the amount due;

(2) The assessment of 29 shares of the capital stock of the Central Fire Insurance Company.

A very thorough and careful review of the evidence discloses that Mr. Bauer was not assessed, so as to make him personally liable for any amount of taxes at the time of his election;

that his name did not appear on any of the tax assessment records of Baltimore City, and the manner in which the property, No. 734 West Baltimore street, is owned and was carried on the field books of the Appeal Tax Court cannot in our opinion supply the qualifications necessary for a member of the City Council.

(1) In order to show the requisite assessment, it is claimed that the field books of the Appeal Tax Court for the years 1925 and 1926, carry the entry of assessment for the property 734 West Baltimore street in the name of "Elizabeth M. Bauer et al."; and the assessor's card for the year 1925 (prepared by Mr. Oscar J. Martinet, one of the assessors of the Appeal Tax Court, for the years 1925 and 1926), carries the name of the owner of this property, 734 West Baltimore street, as "Elizabeth M. Bauer et al." The records in the Bureau of Receipts (formerly the office of the City Collector), for the year 1926, which are in substitution of what before that year had been known as the tax roll, carry the property in the name of "Elizabeth M. Bauer, *without* "et al." This condition prevailed, with reference to the property, 734 West Baltimore street, every year since 1920, down to and including 1927. The evidence further shows that before 1925, the list of owners of property, and the amount for which each was assessed for the purposes of taxation, was an exact copy of the entries pertaining to each piece of property as they appear in the field books of the Appeal Tax Court, which books were official records in that Court. These lists, when duly certified by the Judges of the Appeal Tax Court, and delivered to the City Collector, are designated in the City Charter as the *tax roll* for the current year. (Sec. 171). These tax rolls consist of specially arranged sheets or pages bound in book form, authenticated by a certificate of the Judges of the Appeal Tax Court. On the tax rolls in the City Collector's office from the year 1920, down to and inclusive of 1924, property 734 West Baltimore street was carried in the one name of Elizabeth M. Bauer, whereas upon the field book for those years the entry, as it now appears, shows the property, 734 West Baltimore street, assessed to "Elizabeth M. Bauer et al." The list sent to the City Collector is prepared from the field book by one

of the clerks of the Appeal Tax Court, and checked as to the correctness of the entries, by a different clerk than the one who prepared the list. This circumstance of the conflict of the records in these two departments is significant in support of the contention of the petitioner that the property 734 West Baltimore street has always (prior to 1925), appeared on the field books in the Appeal Tax Court, without the addition of the words or characters "et al." Since 1925, however, it is very likely that the field books have carried the entries as appearing on the assessor's card for 1925; namely, "Elizabeth M. Bauer et al.," although the stubs bound as a loose leaf ledger since the year 1925, and used in place of the bound records in book form, known as the tax roll, continued to carry the property in the name of Elizabeth M. Bauer alone.

Frank J. Bauer says in his testimony that he gave his brother a paper in April or May, 1919, on which was written the names of Elizabeth M. Bauer, William J. Bauer and Frank J. Bauer, and which paper the brother was to take to the Appeal Tax Court and request the property, 734 West Baltimore street, to be transferred to those names on the tax books. The brother, William J. Bauer, testified that he took this paper at that time to the Appeal Tax Court, and requested that the property, 734 West Baltimore street, be put on the tax books in the names of the three owners—but that some clerk at the Appeal Tax Court informed him that it was not the practice to put property in three names, that they did not have space on the books for so many names for each piece of property, that they would put it on the books in the name Elizabeth M. Bauer and keep the memorandum, which would show that the three of us owned the property. Notwithstanding this statement, the field books offered in evidence disclose many instances where entries are made in two and three, and sometimes, more than three names. William J. Bauer says further that on one occasion only did he go to the Appeal Tax Court with a paper or letter written by his brother. There was offered in evidence a letter written by Frank J. Bauer on April 29th, 1925, accompanied by signed interrogatories issued by the Appeal Tax Court, which had been sent to Elizabeth M. Bauer, notifying her of an increase in the assessment of property at 734 West Baltimore street.

It is most unusual to find a person, only twenty-four years of age, so insistent to get his name on the tax assessment books. The ordinary and usual effort is to avoid such a result. The existence of the letter of April, 1925, coupled with the testimony of William J. Bauer, that there was only one communication written by his brother, and taken to the Appeal Tax Court by him, raises very grave doubt that any such incident occurred in 1919, especially as during that year the property was on the books of the office of the City Collector in the name of Lawrence F. Bauer, the father of Frank J. Bauer. The tax bill went out for the year 1919 in the name of Lawrence F. Bauer, notwithstanding the field book in the Appeal Tax Court makes it appear that the property for 1919 was assessed in the name of "Elizabeth M. Bauer et al." The deed to Frank J. Bauer, &c., covering property, 734 West Baltimore street, was not executed until November 11th, 1918, which is about seven weeks after the tax assessment roll was closed for the year 1919, and the presence of the entry in the field book for the year 1919, showing the property as assessed to "Elizabeth M. Bauer et al.," is a circumstance for which no satisfactory explanation has been given. Then again why should the owners wait from November, 1918, until April or May, 1919, to request a transfer on the tax records? Is the fact that the 1925 letter, which William J. Bauer admits he delivered to the Appeal Tax Court in person, is dated April 29th, without significance in suggesting to his mind the month of April? And is it not conclusive that he was not there in April or May of 1919, when he further admits (record, pages 55 and 56), that he only delivered one written communication or memorandum to the Appeal Tax Court? This letter of April 29th, 1925, reads as follows:

"Appeal Tax Court,

City Hall.

Gentlemen:

In reference to the attached, we claim the proposed assessment on the lot to be excessive as there is no improvement on the rear of the lot.

We pay an annual ground rent of $60.45. The owner of the ground has offered us the ground repeatedly at $1,500 which he thinks is a fair value on the ground.

The ground can be purchased at any time for this price for anyone who cares to buy the same.

Respectfully submitted,
ELIZABETH M. BAUER ET AL."

This letter does not disclose the names of the owners of the property nor does it show who is included in the "et al." attached to the signature. There is nothing in this letter which requests that the property be entered on the tax records in the three names, nor any complaint that such a request had ever been made and not complied with. The reasonable inference is that the property was placed on the land records in the names of the present owners as joint tenants in 1918, to avoid administration in the event of the death of Elizabeth M. Bauer; and that the sons were well content to allow the property to be, and remain on the tax records, in the name of the mother. It appears to us probable that the idea of having the name of Frank J. Bauer placed on the tax records never entered the minds of the owners of the property until the present situation developed in the affairs of Frank J. Bauer. If this is not true why then have the owners continued to accept, and pay every tax bill in the name of Elizabeth M. Bauer from 1920, down to and including 1927, without a word of protest or complaint? It is this circumstance that makes a sharp distinction between this case and the case in 136 N. Y. Supp. 273, where the tax bills were sent out in the names of the owners of the property involved in that case, after they had endeavored to have them placed on the tax roll, whereby they were led to believe that their names appeared on the tax records, when in fact they did not. Mr. Bauer cannot complain that he was misled by the form of the tax bills, because they all were issued plainly in the name of Elizabeth M. Bauer.

In our view of the effect of the use of the words or characters "et al." it is absolutely immaterial whether they were on the field book, or the tax roll, or both, for all of the years from 1920 down to and including 1927. Under the authorities, their presence cannot avail to qualify the defendant as being assessed within the meaning of the City Charter.

The Charter provides that persons to be qualified for the office of members of the City Council "shall be citizens of the United States, above the age of twenty-one years, residents of the City of Baltimore three years prior to their election, and for the same time residents of the Councilmanic district for which they are elected, and assessed with property to the amount of $300 each, who have paid taxes on the same one year prior to their election." (City Charter, Sec. 210). The manifest purpose of this requirement is to enable any official or, for that matter any citizen, to go to the tax record and for himself to see if any person submitting himself as a candidate, or any City Councilman after election, has his name on the tax books, and is assessed for three hundred dollars worth of property, and whether he has paid taxes on the same one year prior to his election. An assessment for taxes carries a personal liability for which an action in personam may be maintained. Spitzer vs. Martin, 130 Md. 428, 433; Vanneman vs. Pusey, 93 Md. 686, 690.

For the purpose of enforcing this personal liability "et al." means nothing. It has no fixed, definite or certain meaning, but requires extraneous evidence to give it significance. It is as easy to disavow identity under such a designation, as it is to claim to be within its scope. And in itself "et al." does not carry responsibility for purposes of taxation, and is not the equivalent of the presence on the tax roll of the name of the owner of property. The authorities almost universally hold that as an assessment against a known person, "et al." is invalid, at least as to all the owners, except the one named.

This must be so in Maryland where the Court of Appeals ignores the facts of ownership and of payment of taxes, where the law requires assessment. Electric Power &c. Co. vs. Maryland, 79 Md. 70; Monticello Distilling Co. vs. Baltimore, 90 Md. 416.

Cooley on Taxation, 4th Edition, Vol. 3, Sec. 1104, reads as follows:

"*Joint Owners*—There is considerable conflict in the decisions as to the method of assessing property held jointly or in common. Generally, however,

it is held that the property should be assessed to the owners jointly, *stating the names of all.* An assessment to one of the joint owners by name is generally insufficient, even though the words "et al." are added, although there is some authority to the contrary. An assessment of land to a named person "et al." *ordinarily is invalid, at least as to all the owners except the one named.* An assessment of land to a named person "et al." is in legal effect an assessment to such person and other persons unknown. In some jurisdictions, an assessment of the entire property in the name of one of co-tenants is valid as to the interest of the person assessed, *but not as to the interest of the other co-tenant.*

In the case of McWilliams vs. Gulf, 111 La. 194, the property was held in States Land and Improvement Co., joint ownership by one Clarence J. Harvey and seven others. Assessment was made against Clarence J. Harvey "et al." The Court held that the assessment was invalid as insufficiently describing the joint owners and said:

"Assuming as we must for present purposes these allegations to be true, the assessment was certainly bad as to all the owners save the one named, and possibly so as to him; from which it follows that the exception of no cause of action must be overruled and the case remanded to be tried on its merits."

To like effect is the case of Clark vs. Grogdon, 37 N. H. 562. Property was owned by Amos Clark, John S. Lamprey and William Clark, but was assessed in the name of William Clark "et al." The Court struck out the assessment as invalid, saying:

"The description of the plaintiffs on the list in this case was entirely insufficient, and the warrant was consequently illegal and void as to them. 'Et al.' may as well mean any other person residing in Hampstead as John S. Lamprey and Amos Clark. Used as it was, it is unintelligible; it gave no description whatever of the plaintiffs and no authority to take their property; and the warrant afforded no protection to the defendant."

The cases cited in the note to the above section on Cooley on Taxation to support the text, clearly show that, by the decided weight of authority, the assessment to "Elizabeth M. Bauer et al." is to be regarded as an assessment against her only. Where there is any deviation from or qualification of this rule, statutory provisions will be found to have controlled the situation, or the cases presented questions different from that involved in this case, to wit: the personal liability of an unnamed person for taxes. See also: 37 Cyc. 1006, sub-paragraph F, annotated cases 1914 A, 568; Tasker vs. Garrett, 82 Md. 150.

The other point on which Mr. Bauer relies is that he is joint owner of 29 shares of the capital stock of the Central Fire Insurance Company of Baltimore, issued in the name of "Elizabeth M. Bauer, Trustee, in trust for herself and Frank J. Bauer, joint owners for their joint lives, on the death of either to belong absolutely to the survivor." The testimony is that these 29 shares of stock were reported to the State Tax Commission as being owned by Elizabeth M. Bauer, *"Trustee."* Under such an assessment there is no liability for taxes on Frank J. Bauer. Latrobe vs. Baltimore City, 19 Md., page 13. It is not ownership of property alone which qualifies for the office of City Councilman, but ownership plus assessment in the name of owner. County Comm. vs. Claggett, 31 Md. 210; Spitzer vs. Martin, 130 Md. 428. The fact is, that the Fire Insurance stock is not on the tax roll of the City of Baltimore, either in the name of Elizabeth M. Bauer, trustee, or Frank J. Bauer, nor does the name of Frank J. Bauer appear on the tax roll as owner of the stock, whether it be the field book or records of the City Collector. Nor was the transfer of the stock to the name of Elizabeth M. Bauer, Trustee, reported to the State Tax Commission until January, 1927.

We conclude, therefore, that at no time during the year 1926, was there any assessment on any tax record of Baltimore City, be it field book or tax roll, inuring to the benefit of Frank J. Bauer, as assessing any interest he might have, either in this fire insurance stock, or in the property, No. 734 West Baltimore street.

It is not a reasonable construction of the law nor a sound one, in our judgment, to strain the letter of the law, in order to enable a person to claim qualifications to hold public office under this Charter provision, when both the spirit and letter of the law require that this provision be given a

meaning such as will enable the man on the street to understand and apply it, if he should have occasion so to do.

The evidence in the Bauer case has been reviewed at length because of the inference sought to be drawn in favor of Mr. Bauer, and also because the legal questions in that case are more complex than in the cases of the other respondents.

The evidence, under the petition filed against Philander B. Briscoe, shows that Mr. Briscoe had real estate valued at more than $300 assessed on the tax records in his name from 1924 up to and including the year 1927, and had paid taxes on the same for one year before the election held on May 3, 1927; that is to say, that he had paid taxes on this property for the year 1926, and, therefore, he was qualified on May 3, 1927, to become a member of the City Council.

The evidence, under the petition filed against J. Warren Burgess, shows that Mr. Burgess was assessed on the tax records for the year 1927, and for five or six years prior thereto, on personal property to the amount of $300, but he had not in fact paid taxes on the same for the year 1926, for that reason, he was not qualified on May 3, 1927, to be a member of the City Council.

That, as to Thomas L. A. Musgrave, the evidence shows that property No. 2952 Clifton avenue, was bought by Mr. Musgrave in May, 1926, and was conveyed to him and his wife on June 18, 1926, but was not assessed to him on the tax records until June, 1927. Mr. Musgrave had not paid any taxes on this property for the year 1926. Taxes were, however, supposed to be paid by the building association out of weekly instalments paid into the building association for that purpose. The building association did not pay the taxes for the year 1926, and on June 3, 1927, Mr. Musgrave paid the overdue taxes, but was reimbursed by the building association some time thereafter. Consequently, Mr. Musgrave had not paid taxes on any property assessed in his name for the year 1926, and, therefore, was not qualified on May 3, 1927, to act as a member of the City Council.

The testimony further shows that Mr. Musgrave formerly owned property at 1533 West Lanvale street, and had owned and paid taxes on same for about eight years before August, 1925, at which time he sold and conveyed the property to one Kirsner. This property, 1533 West Lanvale street, was not transferred on the tax records and, for the year 1926, stood assessed to Thomas L. A. Musgrave. He had no interest in it, nor did he pay any taxes on it after the date of its transfer, but the fact of the assessment remaining on the tax records in his name, without the payment of taxes by him, would not avail to qualify him under Section 210 of the City Charter.

James B. Blake bought property, No. 1113 Valley street, on August 23, 1926. The taxes for 1926 were adjusted to the day of transfer, and a refund was allowed to the seller for the balance of the year, because the seller had paid the taxes earlier in that year. But this property was not assessed to Mr. Blake on the tax records until after the tax bills had been made up and mailed out some time about or after the middle of January, 1927. His name is written in ink over the typewritten name on the stub, which is the name in which the property was assessed at the time the tax bills were mailed for 1927 taxes, and the evidence tends strongly to prove, and in our judgment conclusively shows, that this property was not put on the tax records in the name of Blake until May, 1927, so that Mr. Blake had no property assessed to him in 1926, nor did he pay taxes on the same for one year before the election held on May 3, 1927, and, therefore, he was not qualified to become a member of the City Council on May 3, 1927.

Under the evidence and the law controlling these cases, we are of the opinion that on May 3, 1927, Philander B. Briscoe possessed the qualifications for membership in the City Council, set forth in Section 210 of the Baltimore City Charter, but that Thomas L. A. Musgrave, James B. Blake, Frank J. Bauer and J. Warren Burgess were not so qualified.

We will sign an order dismissing the petition as against Philander B. Briscoe, with costs upon the petitioners; and will sign appropriate orders in each of the other four appeals.

Judge Owens dissents in the Bauer case. He is of the opinion that when Bauer in 1919 informed the Appeal Tax Court of his interest in the property on Baltimore street that, from the

time of the delivery of that letter, he was "assessed," as far as the purposes of the Charter provisions are concerned, and he, in a proceeding such as this it not chargeable with the failure of the Appeal Tax Court to properly act upon his letter.

In all other respects the findings of the Court are unanimous.