DUFFEY *v.* RICKARD, CHIEF OF POLICE, ET AL.

[No. 57, October Term, 1949.]

*Decided January 11, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Roland C. Ready,* with whom were *Norman I. Broadwater, James J. Treacy* and *Ready & Broadwater* on the brief, for the appellant.

*Francis H. Urner,* with whom was *D. K. McLaughlin* on the brief, for the appellees.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from an order dismissing a petition for mandamus to compel respondents to "restore" petitioner to "the office and position of a regular policeman of Hagerstown". The case was heard before Judge Mish, without a jury, on petition, answer and testimony. Petitioner was appointed a regular policeman in May, 1946, and held this position until the night of Friday, August 13, 1948. The previous night, *i.e.,* Friday morning after midnight, a woman he had arrested on the street for drunkenness made a serious charge against him. Friday night, just before midnight, petitioner, when about to enter the City Hall to report for duty on the shift beginning at 12:01 A. M., met the Chief of

Police, Captain Rickard. The Chief says he told petitioner he would have to suspend him pending an investigation of the woman's complaint and told him to be there Saturday morning at ten o'clock, that he wanted to talk with him, but he failed to show up. Petitioner says the Chief "discharged" him on August 13, 1948, said he could not let him go to work; said, come in tomorrow and resign, I am getting tired of you. Petitioner came in about 10:30, got his pay check, asked for the Chief and was told he was out, did not wait and did not return. He had told the Chief at midnight he would not resign. He "figured" he "was in hot water".

In the course of the next week, he tried unsuccessfully to consult two different lawyers, and consulted a third, who several times discussed the matter with the Chief of Police, including the possibility of a hearing before the Board of Street Commissioners, but did not ask a hearing and never made any formal demand, written or oral, upon the Board for a hearing. Petitioner himself talked to Mr. Knight, the Police Commissioner, one of the Street Commissioners, respondents, and to the Mayor, who said he could not talk to the Chief of Police. Late in September the lawyer had ceased to represent petitioner. The Chief sent a detective to petitioner's house to get his uniform and other equipment, which petitioner handed over. Later he got employment with a bottling company, and made application for a position at the House of Correction. In his written application he said, referring to his employment as policeman, "Not satisfied". He says this was not true, but was put on the application only "to get a job". He worked at the House of Correction from November till January 15, 1949, when he was discharged because of his record as a policeman. He then employed his present counsel, who on January 27, 1949 wrote the Board "in reference to his dismissal" as policeman by the Chief of Police and requested a hearing. The letter was ignored and the petition for mandamus followed. Before January 27, 1949 petitioner had never demanded a hearing, salary or as-

signment to duty, and no formal charges had been filed against him with the Board. Other facts are stated in Judge Mish's opinion, which concisely covers the case.

Judge Mish in his opinion says: "By the petition filed in these proceedings on February 21st, 1949, the petitioner seeks to have the court issue the writ of mandamus directed to the defendants, 'commanding them to restore the petitioner to the office and position of a regular policeman of Hagerstown, Maryland.'

"The contention of the petitioner is that he was summarily discharged from his position as a policeman of the City of Hagerstown without being given a hearing before the Board of Street Commissioners of Hagerstown in accordance with the requirements of the so-called 'Police Tenure Act'.

"On the other hand the City contends that no hearing was had before the Street Board because he quit his position after charges were made as to his conduct by the Chief of Police and therefore in legal contemplation he resigned from the force.

"By Chapter 192 of the Acts of 1898 the Board of Street Commissioners were given power and authority to appoint regular policemen for the City of Hagerstown and it was provided that 'said policemen shall be subject to removal for cause'. While the Act has been frequently amended, during the period of fifty years since its enactment, this particular provision has never been changed and the Act remains in force as codified in Section 358 of Article 22 of the Code of Public Local Laws, the most recent amendment being embodied in Chapter 209 of the Acts of 1945.

"The construction of this particular statute was before the Court of Appeals in the case of Street Commissioners [of Hagerstown] v. Williams, 96 Md. 232, 53 A. 923, and in a learned and exhaustive opinion by Chief Judge McSherry its import and meaning was made clear. It was there held that under the Act policemen of Hagerstown are entitled to hold their offices so long as they are competent and efficient and that the

power of the board to remove can only be exercised for some cause affecting the ability or fitness of an officer to perform his duties and after notice of charges against him and an opportunity to be heard. And Acts in other jurisdictions of similar import have been given the same construction. 99 A. L. R. 354-358 and notes.

"It is apparent from a reading of the Williams case that in the absence of a resignation of the officer the Chief of Police should have preferred formal charges before the Board of Street Commissioners. But the facts in the Williams case are entirely different from those in this case. Williams was peremptorily dismissed upon informal charges of inefficiency without a hearing by a majority of the Street Board and within ten days thereafter filed his petition for the writ of mandamus in this court. * * * And it was under those circumstances that he was ordered restored to his office. * * *

"But even if I were legally authorized to grant this relief, I do not think it is called for under all the facts and circumstances of this case.

"It was clearly the duty of Officer Duffey to report to the office of the Chief of Police the day following his suspension on August 13th, 1948. He had no right to ignore the order of his superior officer even if the Chief asked him to be prepared to tender his resignation. Certainly the Chief has the right to investigate infractions of disciplinary rules before he can be expected to prefer formal charges with the Street Board."

Petitioner contends that the only issue of fact presented is whether he was "discharged" or suspended by the Chief of Police on the night of August 13th, i.e., whether he was told to come in and talk or to come in and resign. He says his failure to report may have been insubordination for which charges could have been [or now could be] filed against him but he could not be removed without a hearing. From the evidence we think he was suspended, not discharged, but if we assume the contrary the assumption is immaterial. If his conduct amounted to insubordination, it none the less amounted to acqui-

escence in separation from his position as policeman and abandonment of his position. In affirming dismissal of a petition for mandamus to "restore to office" a petitioner alleged to have been unlawfully removed, the Supreme Court said: "When a public official is unlawfully removed from office, whether from disregard of the law by his superior or from mistake as to the facts of his case, obvious considerations of public policy make it of first importance that he should promptly take the action requisite to effectively assert his rights, to the end that if his contention be justified the Government service may be disturbed as little as possible and that two salaries shall not be paid for a single service.

"Under circumstances which rendered his return to the service impossible, except under the order of a court, the relator did nothing to effectively assert his claim for reinstatement to office for almost two years. Such a long delay must necessarily result in changes in the branch of the service to which he was attached and in such an accumulation of unearned salary that, when unexplained, the manifest inequity which would result from reinstating him renders the application of the doctrine of laches to his case peculiarly appropriate in the interests of justice and sound public policy.

"In this conclusion we are in full agreement with many state courts in dealing with similar problems. *McCabe v. Police Board*, 107 La. 162, 31 So. 662; *Stone v. Board of Prison Commissioners*, 164 Ky. 640, 176 S. W. 39; *People ex rel. Connolly v. Board of Education*, 114 App. Div. 1, 99 N. Y. S. 737, and cases cited; *Clark v. City of Chicago*, 233 Ill. 113, 84 N. E. 170.

"We agree with the Court of Appeals that it is entirely unnecessary to consider whether the removal of the relator from office was technically justified or not, since by his own conduct he has forfeited the right to have the action of the Secretary of the Interior reviewed, and the judgment of that court is therefore *Affirmed*." United States *ex rel.* Arant v. Lane, 249 U. S. 367, 372, 39 S. Ct. 293, 294, 63 L. Ed. 650. "We agree with the Court of

Claims that a person illegally dismissed from office is not thereby exonerated from obligation to take steps for his own protection and may not for an unreasonable length of time acquiesce in the order of removal, which it was within the power of the Secretary to make, and then recover for the salary attached to the position. In cases of unreasonable delay he may be held to have abandoned title to the office and any right to recover its emoluments." *Nicholas v. United States*, 257 U. S. 71, 75, 42 S. Ct. 7, 9, 66 L. Ed. 133; a suit for salary. *Cf. Norris v. United States*, 257 U. S. 77, 42 S. Ct. 9, 66 L. Ed. 136. See also cases collected in a note, 145 A. L. R. 767, most of them to the same effect, some reaching an opposite conclusion on different facts.

Judge Mish also says: "Officer Duffey was not ignorant of his right to have a hearing before the Street Board as he had previously been given a hearing by them. It seems to me that his endeavor in securing the services of an attorney and in seeking the assistance of Mayor Sweeney and Commissioner Knight was to be restored to his position without a hearing before the Board. When Captain Rickard refused to drop the charges it seems apparent that Officer Duffey decided not to press the matter further. He secured a position as a driver for a Bottling Company which he held for about a month and then became a guard at the Maryland House of Correction which position he held until January 15, 1949. In his application for guard at the penal institution he stated that he had quit his job on the Hagerstown police force and he reaffirmed this in a conversation with Sergeant Charles V. Main of the Maryland State Police. Neither he, nor his attorney, nor any one in his behalf ever asked for a formal hearing before the Board until almost six months after he was suspended from duty by the Chief of Police. While Officer Duffey never tendered any written resignation, I think that the only fair inference to be drawn from the testimony as a whole is that he decided to quit his job as a regular policeman of the City of Hagerstown prior to the time when he ob-

tained other employment. He thereby waived the rights which he had under the provisions of the statute to which I have referred. It follows that at this late date he is not entitled to a hearing upon the charges preferred against him and the court must therefore decline to issue the writ of mandamus in this case. The petition will therefore be dismissed, the petitioner to pay the costs of these proceedings." Petitioner complains bitterly that there is no evidence "that his endeavor * * * was to be restored to his position without a hearing before the Board". We think this statement by Judge Mish is a legitimate inference from what petitioner says, what he does not say, what he did and what he left undone. But again, assuming the contrary, the result would be the same.

*Order affirmed, with costs.*