COOK *v.* SHERRY ET AL.

[No. 169, September Term, 1972.]

*Decided February 6, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Paul W. Barnett* for appellant.

*J. Frederick Sharer, City Solicitor,* for appellees.

McWILLIAMS, J., delivered the opinion of the Court.

As the late William Schwenck Gilbert once observed, the policeman's lot is not a happy one.[1] The appellant (Cook) is a policeman and he is here because he is far from happy. The architect of his disgruntlement is the appellee Sherry, a retired policeman now Commissioner of Police and Fire of the City of Cumberland; the reason is his demotion from lieutenant to sergeant. Since we think he has indeed been put upon we shall reverse the order of the chancellor, Getty, J., sustaining the demotion.

Cook entered the service of his city in 1956. He was made a corporal in 1962, a sergeant in 1966. In November 1969 he was promoted to the rank of lieutenant. The chancellor said it was conceded that he "is an excellent police officer" and that he had done "an outstanding job in setting up and operating the training division." The chancellor went on to say that "his merit and efficiency ratings attest to his ability." Cook was not one of Sherry's heroes, however. Sherry was a lieutenant when Cook joined the department. Later on he rose to assistant chief. After he retired he became a candidate for election to the office of Commissioner of Police and Fire. The testimony of Officer Gerald Lewis suggests there was little love lost between Sherry and Cook. Lewis said that in a chance encounter he congratulated Sherry on the fine showing he had made in the primary election of 1970, whereupon Sherry confided to him that if he was successful in the general election (he was) "Mr. Giles and Mr. Cook are going to get theirs—they're riding high on the hog right now but when I get finished with them, they're really going to come down to my level." Sherry denied making any such statements.

On 10 August 1970 Cook suffered a heart attack. When his accumulated vacation and sick leave were exhausted he asked for and was granted a leave of absence of one year from 7 October 1970. In January 1971 he requested

---

1. *The Pirates of Penzance*, Act II (1879).

light duty status, pursuant to Rule X, Section 2, of the city's Civil Service Regulations. His request was denied. Sherry said, "We . . . [had] no light duty as lieutenant." Oddly enough he admitted that he did not consider the job of training officer to be arduous duty and that Cook could again have performed that duty. But he said, "He is a lieutenant [and] he has to work wherever the Chief of Police or I put him." Asked if Cook had been given any preference as a lieutenant, as provided in Rule X, Section 2, Sherry said, "No. I done had a lieutenant fill his place."

Cook, apparently fully recovered, returned to duty on 4 October 1971. Three days later Sherry demoted him to sergeant and assigned him to duty as Desk Sergeant on the 4:00 p.m. to midnight shift. Cook's request to the Civil Service Commission for a hearing was denied. The reason given was "that the matter is a result of administrative action under specific ordinances [2] of the Mayor and City Council, and the Civil Service Commission has no jurisdiction." On 22 November Cook filed his appeal in the Circuit Court for Allegany County. The chancellor decided that his petition "must regrettably be denied."

The appellees [3] argue here, as they did below, that it was within Sherry's discretion, under the Civil Service Regulations, to demote Cook at any time before the expiration of an alleged "one year period of probation" following his promotion. It will be recalled that he was promoted in November 1969, that his heart attack occurred in August 1970, and that on 7 October his accumulated vacation and sick leave expired. The Commission took "the position that an employee is in a period of probation for a period of one year from date of promotion, unless the probationary period is interrupted by an absence, in which case the probationary period is extended accordingly." So reckoned, Cook's "probationary period," which

2. The chancellor's comment, in this regard, is of interest. He said, "While the action may be administrative no one has presented any ordinances of the Mayor and City Council that control the situation."
3. The Civil Service Commission is an appellee also.

was "extended" during his incapacity, would not have expired until early November 1971, thereby making him subject to demotion on 7 October 1971. Since we see it quite differently, we shall take a look at the applicable rules, regulations and ordinances.

Rule IX of the Regulations has as its subtitle, "Discharges—Suspensions—Demotions." Section 2 deals with "Demotions"; subsections (a) and (b) thereof are as follows:

"(a) The provisions of Section 36 (g), (h) and (i) [of the City Charter] shall also be applicable in all cases of demotion.

"(b) A 'demotion' is a reduction in wages and/or a reduction in rank or rating."

Section 36 (g) of the Charter provides that:

"All cases of Suspensions or Discharges of a Civil Service employee shall be reported to the Commission within three (3) days after said Suspension or Discharge has taken place; the report shall contain full details of the conditions. It shall be within the power of the Commission to call a hearing in the case, and if the details brought out justify, the Suspension or Discharge may be voided or the punishment may be changed."

It is agreed that no report of Cook's demotion was ever submitted to the Commission, that no hearing was held, and that his own request for a hearing was denied.

Subsections (a) and (b) of Section 5 of Rule VI provide as follows:

"Section 5. PROBATIONARY PERIOD

"(a) When a vacancy occurs or a new position is created in the Police and Fire Departments, the appointing authority shall fill such position provisionally by the appointment of one of the persons certified to him by the Com-

mission, which appointment shall be on probation for a period of one (1) year.

"(b) At or before the expiration of the one (1) year period of probation the head of the Department in which such candidate is employed, or the Mayor and City Council by a majority vote, may, in the exercise of their discretion, remove the said probationer."

Cook argues, correctly we think, that the probationary period of one year required by Rule VI applies to initial appointments only. The discretion lodged in the department head is limited to the "remov[al] of the said probationer." Nothing is said about demotion. Rule VII deals with "Promotions" but, significantly, there is no mention of a probationary period. Even more significant is the fact that the Commission, in April 1972, added a new section to Rule VII providing a 90 day probationary status for promoted employees.[4] It will be observed that for unsatisfactory performance the promoted employee can be "returned to his former status" but not "remove[d]" as permitted by Rule VI, Section 5, subsection (b).

To counter the argument that the probationary period required by Rule VI applies to initial appointments only the appellees insist, and the chancellor seems to have agreed, that for many years the Department has followed a policy of having all promotions made on a probationary basis for one year following the date of appointment. As we have pointed out the Commission seems to have recognized and accommodated itself to this "unwritten rule." The chancellor thought the "unwritten rule" was clearly established and that there is "ample

4. "An employee promoted ... shall be considered to be in a probationary status for a period of ninety (90) days; provided, however, that such promoted employee shall work at least fifty (50) days at the job or position to which he has been promoted during said ninety (90) day promotion probationary period in order for said promotion to become final. ... If it is determined that the employee is not performing satisfactorily in the promoted position, he shall be returned to his former status."

authority in the cases to support the proposition that courts will take judicial notice of custom and usage when that usage is general and of such long standing as to have become a part of the law itself." We do not agree, in the circumstances of the case at bar, that the notion that the "probationary period" is applicable to all promotions is a matter of which the court can take judicial notice, nor do we agree that it has been "shown by clear and convincing evidence to be definite, uniform, well-established, and so general that knowledge of it may be presumed." *Wathen v. Pearce,* 175 Md. 651, 653, 3 A. 2d 486 (1939). Furthermore we will not be persuaded to countenance an "unwritten rule" under which it would have been possible to "remove" an employee with a record of long, loyal and efficient service without giving him a hearing or without filing any charges against him. In short, Sherry could have cashiered any man he disliked simply by promoting him. He would then be a probationer and subject to "removal." The new "written rule," as we have said, limits the department head to returning the employee "to his former status" during his 90 day probationary period.

We think Sherry's order demoting Cook should be set aside and that Cook should be confirmed in the rank of lieutenant. And, of course, the pay and allowances appurtenant thereto should be restored, accounting from 4 October, 1971.

> *Order of 18 April 1972 reversed.*
>
> *Case remanded for the passage of an order conformable to the views expressed in this opinion.*
>
> *Costs in this Court and the trial court to be paid by the appellees.*