# THE CITY OF HAGERSTOWN ET AL. *v.* BLENARD

[No. 191, September Term, 1972.]

*Decided March 27, 1973.*

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Richard F. McGrory,* with whom were *Edward Oswald, Jr.,* and *McCauley & Cooey* on the brief, for appellants.

*H. Emslie Parks* and *David K. Poole, Jr.,* for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

A while back we recalled Gilbert's observation that "the policeman's lot is not a happy one." *Cook* [a Cumberland policeman] *v. Sherry*, 268 Md. 26, 299 A. 2d 811 (1973). What was true in Cumberland appears to be true also in Hagerstown; and, indeed, it seems to have been that way for at least 70 years. *Duffey v. Rickard*, 194 Md. 228, 71 A. 2d 41 (1950); *Board of Street Commissioners of Hagerstown v. Williams*, 96 Md. 232, 53 A. 923 (1903). Our present concern is an order of the trial judge, Naughton, J., directing the reinstatement of the appellee (Blenard) who had been "retired" by the Mayor (Mills). We shall affirm. The facts of record are not in significant dispute.

Blenard joined the force in October 1940. In November 1968 he was promoted to captain; his salary was raised to $10,500. On 11 September 1970 Mills told Blenard that he was to be retired. Mills's letter of 2 November, an excerpt from which is set forth below, confirmed September's bad news.

> "This letter will confirm your retirement from the Police Department of the City of Hagerstown, effective November 1, 1970.
> "This was a very difficult decision for me to make. It was only after many months of study and consultation with the Chief of Police, the Chairman of the Board of Public Works, and the Personnel Director, that the decision was reached which resulted in your retirement.
> "You will be retired at an annual salary of $5,520 for your lifetime. In addition, health insurance for you and your dependents will be paid for by the City of Hagerstown for life."

When Blenard's request for reinstatement was refused he filed his petition for the issuance of the writ of mandamus.

Blenard alleged in his petition that "at all times while a member of the Police Department, and most

particularly while holding the position of Captain, [he] conducted himself properly and performed his duties efficiently, honestly and capably," that Mills had no just cause for his "summary and arbitrary dismissal," that the Personnel Director "preferred no charges against [him]," that he was given no reason for his discharge, that he was not given a copy of any charges, nor was he given an opportunity to be heard and to be represented by counsel at a hearing. He alleged further that his service had been faithful, that he is physically capable of performing the duties of the office, that he is not permanently disabled and that Mills did not procure a certificate signed by two reputable physicians that he is incapable of performing active police duty and that his disability is permanent.

Mills's demurrer to the petition having been overruled, he answered saying Blenard "knew or should have known why he was being retired" and that his (Mills's) "generous and benevolent" action was taken "after a thorough investigation and a just determination that the efficiency of the Police Department required his retirement." He admitted he had made no attempt to show that Blenard was "physically incapable." He said "he proved to be wholly incompetent" to be the second in command of the Police Department. The alternative to retirement, he continued, would have been the preferring of "charges of incompetency and misconduct" the "probable" result of which would have been his discharge "without pension."

Blenard filed a motion for a summary judgment which he later withdrew. His demurrer to Mills's answer was sustained with leave to amend. In his amended answer Mills again alleged Blenard's incompetence; he declared that a "thorough investigation determined that the overall efficiency of the Police Department required . . . [his] retirement." The demurrer to the amended answer was sustained without leave to amend. Judge Naughton ordered Blenard's reinstatement on 18 August 1972.

In 1949 the General Assembly repealed Hagerstown's 65 year old charter and enacted a new charter in lieu thereof. Chapter 117 of the Laws of 1949. Directly thereafter the new charter was submitted to and approved by the city's qualified voters. Everstine, Code of Public Local Laws of Washington County, 1970 ed., Art. 15, Hagerstown. Section 15-47 provides, in part, as follows:

"15-47. Classified service; rules.

"The Personnel Director shall prescribe, amend and enforce rules for the classified service, which shall have the force and effect of law, shall keep minutes of all proceedings and records of his examinations, and shall make investigations concerning the enforcement and effect of this Charter and of the rules. He shall make an annual report to the Mayor. The rules shall provide:

\* \* \*

"(12) For discharge or reduction in rank or grade after appointment or promotion is completed *only* after the person to be discharged or reduced has been presented with *the reasons for such discharge or reduction, specifically stated,* and has been allowed a *reasonable time to reply* thereto in writing, the reasons and the reply shall be filed as a record with the Director." (Emphasis added.)

Blenard became a member of the "Classified Service" by virtue of the provisions of Section 15-46 of the Charter.

Mills's case against Blenard rests entirely upon his interpretation of Section 15-55 (a) which, in part, is as follows:

"Retirement—The Mayor is hereby empowered and authorized, whenever in his dis-

cretion, the efficiency of the Police Department of Hagerstown may require it, to retire any regular policeman, Chief, Captain or Lieutenant and to direct the payment to him by the City for life of a sum of money or monthly installments, equal to one-half of the compensation allowed him at the date of his retirement; provided, however, that such regular policeman, Chief, Captain or Lieutenant shall have served faithfully as a policeman of Hagerstown for not less than fifteen years or shall have been permanently disabled in the discharge of his duty as a policeman of Hagerstown, *and the said Mayor shall in all cases, before making such retirement,* procure and file among his records a certificate signed by at least two reputable physicians of Hagerstown, that the *person proposed to be retired* has been thoroughly examined by them, and that he is incapable of performing active police duty and that such disability is permanent in its nature. . . . ." (Emphasis added.)

He insists he has the power and authority to turn out on half-pay any member of the department who has "served faithfully" for 15 or more years if he thinks the efficiency of the department *may* require it. He looks upon the police department as a "quasi-military organization" for the efficient operation of which he is responsible. In his brief he puts to us the notion that a "healthy and effective sergeant may not be an efficient lieutenant, and a person otherwise efficient in the subordinate role of a lieutenant may not efficiently perform the higher duties and responsibilities of a captain of police, notwithstanding he may be, from a medical standpoint, a physically and emotionally healthy individual." Blenard, he insists, falls into this category. In his answer, however, he labeled Blenard "wholly incompetent" and he intimated a charge of "misconduct" could be sustained.

We doubt that the framers of the charter or the General Assembly or the voters themselves ever intended to invest the Mayor with a power having such a handy potential for mischief. Nor indeed do we think the words used permit any such construction. It seems entirely clear to us that Section 15-55 (a) establishes two classes of policemen who may be subject to retirement by the Mayor: the first class embraces policemen who have served faithfully for 15 years and who because of physical or mental illness or an injury not connected with police duties have become permanently incapable of performing active police duty; the second class embraces policemen with less than 15 years of service who have become permanently incapable of performing active police duty because of injuries sustained in the discharge of police duties. The italicized language seems to confirm our view. The Mayor must "in all cases" before making "such retirement" procure and file the certificates of two physicians. We think "all cases" means all cases, whether the policeman is a 15 year veteran or a rookie who has had the misfortune to be permanently disabled in line of duty. The words "such retirement" in the italicized phrase can only refer to the immediately prior use of the word "retirement" which, of course, is before the establishment of the two classes. Similarly there is no reason for supposing that the italicized words "person proposed to be retired" applies to one class to the exclusion of the other. Obviously it applies to both.

It is perhaps fair to assume that Blenard had been a satisfactory lieutenant, otherwise he would not have been promoted. And it may well be true that his ability to deal with the duties and responsibilities of the captaincy was disappointing but there are legions of public servants who have been raised to or beyond the level of their competence. As a rule, and perhaps deservedly, these errors of judgment must be endured by those who make them. If the incompetence and misconduct alleged by Mills is truly of such a nature as to justify Blenard's separation from the department then, as required by

Section 15-47 (12), he must be "presented with the reasons . . . [therefor], *specifically stated,* and . . . [he must be] allowed a reasonable time to reply thereto in writing . . . ." (Emphasis added.)

> *Order affirmed.*
> *Costs to be paid by the appellants.*