FORAMI, MAYOR OF CAPITOL HEIGHTS *v.*
REYNOLDS, ET AL.

[No. 580, September Term, 1966.]

*Decided December 8, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES and FINAN, JJ.

*John A. Castagna,* with whom were *Hyman Ginsberg* and *Ginsberg & Ginsberg* on the brief, for appellant.

No brief and no appearance for appellees.

BARNES, J., delivered the opinion of the Court.

This appeal involves the issuance of a writ of mandamus by the Circuit Court for Prince George's County (Bowen, J.) directed to the appellant, Leo P. Forami, mayor of the Town of Capitol Heights, Maryland (Forami or the mayor), directing him to reinstate a police officer (or bailiff) of the Town with back pay and to remove forthwith three other police officers (or bailiffs) from employment by the Town.

Forami was elected mayor of the Town of Capitol Heights, a duly incorporated municipal corporation, for a two-year term in May, 1966. This office is an uncompensated one, but the mayor has the full powers of an executive of a municipal corporation and, as part of his official duties, is required to enforce the police power of the Town. At the same election Eugene Zamer, Louis Reynolds, James L. Gearhart (who resigned after his election and James E. Clark was lawfully elected by the Council in his place), Vance Davis, Theodore Harris and Charles Kamm were elected as members of the Town Council, consisting of six members, for a two-year term.

Section 8-19 of the Code of Prince George's County (Everstine Ed. 1957) provides as follows:

"There shall be appointed by the Mayor, subject to confirmation by the Town Council at its next meeting, regular or special, one or more persons as bailiffs of said town, whose duty it shall be to preserve the peace and good order of the town, and for this purpose the bailiff or bailiffs are hereby vested with the same power

248

and authority now possessed by constables under the laws of this state.

"The bailiff or bailiffs shall take the required oath and enter upon the duties of their office on the first day of July in each year, or at such time as appointed, but shall not serve beyond the July 1st next following their appointment, unless reappointed and confirmed; provided, however, that nothing in this section shall be construed to affect the appointment or term of office of the bailiffs holding office at the time this section is enacted into law."

Section 8-48 of that same Code provides:

"For neglect of duty or incompetency any town agent or official appointed by the Mayor or by the Mayor and Common Council may be removed from office at any time by a majority vote of the Common Council and the Mayor, the Mayor's vote to be equal to that of any one of the members of the Common Council for this purpose."

Harry Brommer had been appointed as police sergeant and Leo Bury as a policeman of the Town by the mayor for a one-year term beginning July 1, 1966, apparently sometime in June, 1966. These appointments were confirmed by the Council at its meeting of June 13, 1966.

At the council meeting held on June 27, 1966, according to the minutes of that meeting, the following occurred: Councilman Reynolds stated that "the police of the town had not been working smoothly and he made a motion that the appointment of Mr. Leo Bury be terminated as of June 30, 1966. This was seconded by Mr. Davis and the vote resulted in three for and one against." At that meeting the mayor was present, Councilman Harris acted as Chairman of the meeting and Councilmen Reynolds, Davis, Clark and Kamm were present. Councilman Zamer was absent.

At the meeting of the Council on July 11, 1966, the mayor submitted the following letter to the Council:

"WHEREAS, at a regular meeting of the Capitol Heights Town Council held on 27 June 1966, upon

the motion of Louis Reynolds, Councilman, and upon the seconding of said motion by Vance Davis, Councilman, a vote was taken upon the said motion to terminate the appointment of officer Leo W. Bury, a member of the town police force, and,

"WHEREAS, the vote recorded in the minutes of the meeting of the aforesaid date is shown as follows:

3 Councilmen voting in favor of the said motion:

1 Councilman voting against the said motion.

1 Councilman unrecorded.

1 Councilman absent.

"NOW, THEREFORE, pursuant to the said vote and pursuant to section 8-17 of the Capitol Heights Town Charter, said motion failed to be carried and passed, and

"WHEREAS, it is acknowledged that section 8-17 of said Charter is subject to interpretation and WHEREAS it may be deemed advisable or necessary that any doubt remaining on the part of the Town Councilmen be hereby expelled.

"I, Leo P. Forami, Mayor of the Town of Capitol Heights, pursuant to section 8-16 of said Charter, hereby exercise the power of veto over said motion, and I do hereby declare said motion to be null, void, and vetoed.

## REASONS

"1. The action of the Council which said motion purported to exercise is an executive function which is beyond the authority of the Council to exercise.

"2. Capitol Heights town police officers' term of service expire by operation of section 8-19 of the Capitol Heights Town Charter.

"3. That dismissal of all town appointees should be made pursuant to the provisions of section 8-48 of the Town Charter.

"4. That the Council's purported action constitutes an usurpation of the Mayor's authority under the Charter as chief executive officer.

"That Councilmen's authority is legislative in nature and is limited to that specified in said Town Charter, specifically as follows:

"* * * To pass ordinances, laws, and regulations, * * *."

The minutes of the meeting of the Council on July 11, 1966, show in relevant part, the following:

"Mr. Reynolds then spoke of the police system of the town and that Mayor Forami give effect of his, Mr. Reynolds' motion that Private Bury be removed from police force. And Mr. Reynolds asked Mayor Forami to have Private Bury turn in his equipment and leave the police force. This was seconded, this motion was seconded by Mr. Kamm and upon a vote Mr. Kamm voted aye, Mr. Reynolds voted aye, Mr. Davis voted aye and Mr. Clark nay, Mr. Zamer not voting and Mr. Harris absent.

"Mr. Reynolds then made the motion that Mr. Brommer, who, Mr. Reynolds said, was never formally removed from the police force, be reinstated and given full pay. This motion was seconded by Mr. Davis and upon a vote—after Mr. Reynolds asked that the record of June 17 be read in this Mr. Reynolds stated that the Mayor's recommendations of appointments included Sergeant Brommer's name and that the recommendations were approved by council. The vote was then taken and was as follows:

"Mr. Kamm aye, Mr. Davis aye, Mr. Reynolds aye and Mr. Clark nay, Mr. Zamer not voting and Mr. Harris being absent.

"Mr. Reynolds then made the motion that the two new police officers who were appointed by the Mayor, namely Mr. Bruce Best and Mr. Charles Crantham be not approved by the council, and it be declared null and void. This was seconded by Mr. Kamm and the vote was taken on the same as follows: Mr. Kamm aye, Mr. Davis aye, Mr. Reynolds aye and Mr. Clark nay, Mr. Zamer not voting and Mr. Harris being absent."

Sergeant Brommer on June 30, 1966, was told by Mayor Forami that he was no longer on the force. Being advised that he would be charged with impersonating an officer if he took office on July 1, 1966, Sergeant Brommer removed his gun and badge on June 30 at midnight and, although he retained his police equipment, he has not worn it since. Mayor Forami had sought to take this equipment away from the Sergeant and had filed a replevin action to accomplish this. The police equipment, however, was not surrendered. The Sergeant did not receive any salary after June 30, 1966. The Mayor advised Mr. Bury to stay on the force and he continued to operate a police vehicle and retained his police equipment as did Mr. Best and Mr. Crantham who were appointed by the mayor on July 2, 1966. The mayor authorized pay by the Town of Bury, Best and Crantham as police officers.

On July 22, 1966, Councilmen Reynolds, Harris, Kamm and Davis, individually and collectively as members of the Town Council and as taxpayers of the Town, together with Sergeant Brommer, filed a petition in the Circuit Court for Prince George's County against Mayor Forami, Bury, Best and Crantham for a writ of mandamus, with alternative relief by way of injunction, to require the mayor, individually and as mayor to (a) formally remove Bury, Best and Crantham as police officers; (b) refrain from retaining these three defendants in office; (c) reinstate Sergeant Brommer; (d) reinstate Louis Reynolds as Police Commissioner (Mayor Forami had appointed Reynolds to this position but notified Reynolds as of June 30, 1966 that he had been relieved of duty); (e), (f) and (g) refrain from attempting to remove officers who have not properly been removed pursuant to section 8-48 of the County Code, expending money without the Council's approval and from usurping the powers of the Council.

A demurrer to the petition was filed by the mayor alleging as reasons that the matters were internal political matters and the plaintiffs' remedies rested with their constituents, the petition represented an attempt to usurp the mayor's executive authority, the council action was beyond its legislative function, and there was an adequate remedy at law.

Judge Bowen overruled the demurrer and, after hearing tes-

timony and the argument of counsel, rendered an oral opinion indicating that the writ of mandamus would issue. He signed an order on August 16, 1966, to that effect. The writ of mandamus was issued on August 18, 1966, pursuant to the lower court's order, and provided that the mayor (1) reinstate Brommer to the position of police officer for the Town, and (2) remove Best, Crantham and Bury from the police force of the Town. A timely appeal was taken to this Court from the lower court's order and from the issuance of the writ of mandamus.

Four principal questions are presented to us:

(1) Did the Circuit Court have jurisdiction to issue a writ of mandamus?

(2) Was Sergeant Brommer entitled to be reinstated in his office?

(3) Should Bury have been removed from the police force of the town?

(4) Should Best and Crantham have been removed from the police force of the town?

We are of the opinion that all of these questions should be answered in the affirmative and that the order of the lower court should be affirmed.

(1)

We are of the opinion that the lower court had jurisdiction to issue the writ of mandamus in this case.

The petition filed in this case for the issuance of a writ of mandamus or, in the alternative, for injunctive relief, clearly stated a sufficient cause of action for the issuance of the writ of mandamus. The principal issue was the validity of the title of the police officials to their public offices. When the title to public office is the principal issue involved and the determination of this question involves a question of law, a mandamus has consistently been held by this Court to be the proper remedy. *Carey v. Jackson,* 165 Md. 472, 169 A. 922 (1934); *Richardson v. Blackstone,* 135 Md. 530, 109 A. 440 (1920); *Price v. Collins,* 122 Md. 109, 89 A. 383 (1913); *Hummelshime v. Hirsch,* 114 Md. 39, 79 A. 38 (1910); *Washington County Comm'rs v. Board of School Comm'rs,* 77 Md. 283, 26 A. 115 (1893); *Harwood v. Marshall,* 10 Md. 451 (1875); *Harwood v. Marshall,* 9 Md. 83 (1856); and, *Marshall v. Harwood, 7*

Md. 466 (1855). The writ of mandamus may issue to require the appointment of a public official when only a legal question is involved, *Board of School Comm'rs of Anne Arundel County v. Henkel,* 117 Md. 97, 83 A. 89 (1912) ; to reinstate a person in an office from which he has been illegally removed, *Field v. Malster,* 88 Md. 691, 41 A. 1087 (1898) ; *Miles v. Stevenson,* 80 Md. 358, 30 A. 646 (1894) ; and the writ may issue to compel a person to vacate an office and to cease from the exercise of its functions. *Hummelshime v. Hirsch, supra.* See the helpful note "Procedure to Test Title to Public Office in Maryland," 6 Md. L. Rev. 186-190 (1942).

When, however, the validity of an appointment to public office is a question involved, but is not the primary question, a court of equity may have jurisdiction to grant relief in a proper case. As Chief Judge Brune, for the Court, aptly summarized the Maryland law in this regard in *Miller v. County Comm'rs of Carroll County,* 226 Md. 105, 114, 172 A. 2d 867, 871 (1961) :

> "As to trying title to public office, it is well established by many cases in this State, such as *Carey v. Jackson,* 165 Md. 472, 169 A. 922, that mandamus is the proper remedy to test the validity of such an appointment. However, where the validity of an appointment is a question, but not the primary question,—and the line may be a hard one to draw with precision—the jurisdiction of equity has been upheld."

To avoid a possible difficulty in determining whether the jurisdiction in this case was at law by way of mandamus, or in equity by way of injunctive relief, the petitioners, pursuant to Maryland Rules BF 40-BF 43, invoked equitable relief by injunction as an alternative method of relief. In our opinion this was a wise precaution, but, in this case, relief by way of mandamus was proper in that the principal question presented was the title to public office and this question involved only legal considerations.

(2)

We are of the opinion that Sergeant Brommer was entitled to be reinstated in his office. He was duly appointed to his of-

fice by the mayor in June, 1966, and this appointment was confirmed by the Town Council at its meeting of June 13, 1966. It is not clear from the ordinance (section 8-19 of the Prince George's County Code already quoted) that he was required to take the oath of office again as he had already taken the oath at the time of his original prior appointment. Assuming, *arguendo,* that he was required to take the oath again, the duty of the mayor to administer this oath to him was merely ministerial and the mayor may properly be compelled by mandamus to administer the oath as part of the Sergeant's reinstatement. *Spitzer v. Martin,* 130 Md. 428, 100 A. 739 (1917); *Groome v. Gwinn,* 43 Md. 572 (1875).

Having been validly appointed and confirmed as a police officer, Sergeant Brommer could only be removed from this office as provided in section 8-48 of the Prince George's County Code. No proceedings under this section were filed against him nor has there been a majority vote of the Council to remove him under that section. On the contrary, a motion was approved by the Council at its meeting of July 11, 1966, *to reinstate him* by a vote of three in the affirmative, one in the negative, one not voting and one absent. Whatever may be the effect of this action, it is clear that there was no vote of a majority of the Council *to remove* him under section 8-48.

### (3)

We do not reach the questions of the sufficiency of the vote in regard to Bury pursuant to section 8-48 or, as the mayor argues, that Bury was not given notice of the charges against him and thus would be denied due process of law by his dismissal. Bury did not testify to his lack of notice or suggest that he had been prejudiced thereby. More importantly, Bury did not appeal from the finding of the lower court that he had been properly dismissed. Questions in regard to the propriety of his dismissal are, therefore, not properly before us. See *Glen Alden Corp. v. Duvall,* 240 Md. 405, 421, 215 A. 2d 155, 167 (1965). See also *Duffey v. Rickard,* 194 Md. 228, 71 A. 2d 41 (1950).

### (4)

It seems clear that Best and Crantham had never been confirmed by the Council as required by section 8-19 at its meet-

ing subsequent to their appointment by the mayor and, hence, thereafter they could no longer be lawfully employed by the town under their appointment. *State v. Rogers,* 93 Mont. 355, 18 P. 2d 617 (1933) ; 62 C.J.S. *Municipal Corporations,* section 473(a). At the meeting of the Council on July 11, 1966, the minutes show that a motion was made by Councilman Reynolds that the appointment of Best and Crantham "be not approved" and "be declared null and void." This motion passed by an affirmative vote of three councilmen, with one negative vote, one not voting and one absent. It is obvious from this that the appointments of Best and Crantham were not confirmed and that they could no longer continue to hold these offices after July 11, 1966. The mayor was then under the ministerial duty to remove them from the town's police force.

> *Order and issuance of the writ of*
> *mandamus affirmed, the costs to*
> *be paid by the appellant.*