73 A.3d 1086

Kevin P. CLARK

v.

Mayor Martin O'MALLEY, et al.

Natasha Clark

v.

Mayor Martin O'Malley, et al.

Nos. 93, 94 Sept. Term, 2009.

Court of Appeals of Maryland.

Aug. 23, 2013.

172

Neal M. Janey, Baltimore, MD (A. Dwight Pettit of A. Dwight Pettit, P.A., Baltimore, MD; of Counsel: Stuart O. Simms of Brown, Goldstein & Levy, LLP, Baltimore, MD), on brief, for Petitioner/Cross–Respondent in No. 93, Sept. Term, 2009.

Matthew W. Nayden, Chief Solicitor (Kathryn W. Sullivan, Assistant Solicitor of Baltimore City Department of Law, Baltimore, MD), on brief, for Respondents/Cross–Petitioners in No. 93, Sept. Term, 2009.

Andrew Radding (Jeffrey Kinstler of Adelberg, Rudow, Dorf & Hendler, LLC, Baltimore, MD), on brief, for Petitioner in No. 94, Sept. Term, 2009.

Kathryn W. Sullivan, Assistant Solicitor (Matthew W. Nayden, Chief Solicitor, Baltimore City, Department of Law, Baltimore, MD), on brief, for Respondents in No. 94, Sept. Term, 2009.

Argued before HARRELL, BATTAGLIA, GREENE, BELL,* MURPHY,** JOHN C. ELDRIDGE, (Retired, Specially Assigned) and IRMA S. RAKER (Retired, Specially Assigned), JJ.

BELL, C.J.

The present appeals are the second time during the course of the parties' litigation that this case has come to this Court. They, like the one before them, can be traced back to the discharge of Kevin Clark, the petitioner, from his position as Police Commissioner for Baltimore City, by the former Mayor of Baltimore City, Martin O'Malley ("Mayor"), and the City Council of Baltimore, the respondents. The facts surrounding that discharge and the procedural posture of the case pending this Court's first decision were summarized in *Mayor & City Council v. Clark*, 404 Md. 13, 944 A.2d 1122 (2008) (*Clark II*):

"The respondent, Kevin P. Clark (hereinafter 'Clark' or 'the respondent'), in 2003 was appointed the Police Commissioner of Baltimore City by the Mayor of the City of

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

** Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court, but did not participate in the decision or adoption of this opinion.

Baltimore (hereinafter 'Mayor') and confirmed by the City Council. Prior to his confirmation, Clark and the Mayor entered into a contract, denominated 'Memorandum of Understanding,' (MOU), 'to employ the services of Clark as the Police Commissioner of Baltimore City.' The contract, which purported to be for 'the remaining term of the last Commissioner until June 30, 2008,' addressed the terms and conditions of Clark's employment as Police Commissioner. One term related to his removal as Commissioner. Albeit in the context of 'Additional Compensation/Severance Pay,' the parties acknowledged, in Section 2. A. of the MOU, the applicability of PLL § 16–5(e) to the removal of the Commissioner [1] and denied any intention to 'affect the rights of the Mayor in that respect.' In another section, however, the agreement introduced and prescribed another method of removal, one not contemplated or addressed in the Code of Public Local Laws, termination without cause. Section 12. of the MOU provides:

---

1. The removal of the Police Commissioner of Baltimore City is addressed in § 16–5(e) of the Code of Public Local Laws of Baltimore City (1997 Edition), which provides:

 "The Police Commissioner is subject to removal by the Mayor for official misconduct, malfeasance, inefficiency or incompetency, including prolonged illness, in the manner provided by law in the case of civil officers."

 We note that, in response to this Court's decision in *Mayor & City Council v. Clark*, 404 Md. 13, 33, 944 A.2d 1122, 1133–34 (2008), the General Assembly amended the Public Local Laws of Baltimore City, effective June 1, 2009, to provide that a Police Commissioner may be removed from office "at the pleasure of the Mayor." Laws of 2005 Ch. 39 and Ch. 40. The Appointment, term, and qualifications of the Police Commissioner of Baltimore City are prescribed by § 16–5(a). As relevant, that section provides:

 "The Police Commissioner of Baltimore City shall be appointed by the Mayor of Baltimore City, subject to confirmation by the City Council by a majority vote of its members, for a term of six years, the first term to commence July 1, 1978, and continue until a successor is appointed and qualified as herein provided, but no person is eligible for the appointment unless that person is a citizen of the United States, not less than 30 years of age, and has not had less than five years' administrative experience that is sufficiently broad, responsible and technical to prepare that person to function effectively at the desired level as police commissioner."

" 'Either party may terminate this contract at any time, by giving forty-five (45) days prior written notice to the other. Notwithstanding the above sentence the provisions of Section 2B [5] remain in force.'

"Clark commenced his role as Police Commissioner following the signing of the MOU. A little more than a year and a half later, on November 10, 2004, however, 'pursuant to Sections 12 and 13 of the Memorandum of Understanding,' he was relieved of his command. The letter providing the requisite forty-five days notice of the termination of the MOU and, thus, terminating his tenure as Police Commissioner, was delivered to Clark by the City Solicitor, and, as relevant, advised:

" 'This notice is sent on behalf of the Mayor and City Council of Baltimore (the 'City') pursuant to Sections 12 and 13 of the Memorandum of Understanding ('MOU') between you and the City dated February 19, 2003. This notice shall serve as the City's 45–day notice of termination of your employment. Thus, your employment shall terminate 45 days from today. However, as the Mayor announced this morning, you have been relieved of all official duties as of 8:30 a.m., November 10, 2004, and therefore, your further access, if any, to Police Department facilities, equipment, or documents will be subject to the specific, prior authorization of Acting or Interim Police Commissioner Hamm.'

"Clark filed, in the Circuit Court for Baltimore City, a verified complaint, naming as defendants, Mayor Martin O'Malley and the Mayor and City Council of Baltimore, in which, in addition to seeking reinstatement as Police Commissioner and monetary damages, he requested declaratory and injunctive relief. After some preliminary skirmishing, consisting of the denial of injunctive relief and the denial of the petitioner's dispositive motion for summary judgment, Clark filed an amended complaint. In response, the petitioner again moved for summary judgment. Following a hearing, the Circuit Court granted summary judgment to the petitioners, concluding that the MOU was a valid and

unambiguous contract, pursuant to which Clark had been lawfully terminated, upon notice properly given pursuant to paragraphs 12 and 13 thereof. The Circuit Court also issued a declaratory judgment, in which, consistently, it declared that the Mayor properly had terminated Clark, without cause, on proper notice. Clark immediately noted an appeal to the Court of Special Appeals.

"The intermediate appellate court reversed the judgment of the Circuit Court. *Clark v. O'Malley,* 169 Md.App. 408, 901 A.2d 279 (2006) [*Clark I* ]. Concluding that the trial court erred in holding, as a matter of law, that the MOU was valid and enforceable, it held that the Mayor did not have the authority to remove a Police Commissioner pursuant to a contract providing for removal without cause, the Mayor's ability to remove the Police Commissioner having been limited by the *General Assembly,* 169 Md.App. at 439, 901 A.2d at 297, and, therefore, the removal provisions of the MOU were invalid. The Mayor and the Mayor and City Council of Baltimore timely filed a petition for writ of certiorari with this Court, which we granted. *Baltimore v. Clark,* 395 Md. 56, 909 A.2d 259 (2006)."

*Id.* at 16–19, 944 A.2d at 1124–26.

After considering and rejecting the various arguments advanced by the petitioners in that case in challenging the intermediate appellate court's decision, we addressed the only question presented by the petitioner's "cert" petition: "whether Kevin Clark is bound by the unambiguous 'right to terminate without cause' provision in the employment contract that he negotiated with the City of Baltimore." *Id.* at 36, 944 A.2d at 1136.[2] We held that a provision of an employment contract,

---

2. The petitioner, in *Clark I,* presented for review, in the Court of Special Appeals, only one question, which challenged the propriety of the trial court's grant of the Mayor's motion for summary judgment. *Clark v. O'Malley,* 169 Md.App. 408, 411, 901 A.2d 279, 281 (2006) *aff'd sub nom. Mayor & City Council of Baltimore v. Clark,* 404 Md. 13, 944 A.2d 1122 (2008). As phrased by the intermediate appellate court, that question was: "Did the circuit court err in granting appellee's motion for summary judgment?" *Id.* In addressing that question, the interme-

entered into by the Mayor and a candidate for police commissioner in connection with the latter's appointment to that office, and which gave the Mayor the right to terminate the Police Commissioner's employment, without cause, did not trump P.L.L. § 16–5(e), which, by its terms limited the Mayor's power of discharge to the grounds set forth therein and, therefore, was unenforceable. We explained:

> "The removal power, as articulated in § 16–5(e), we hold, is not modifiable by a MOU, and, in particular, the contractual language at issue in the case sub judice. In that regard, we reiterate, 'a contract conflicting with public policy set forth in a statute is invalid to the extent of the conflict between the contract and that policy.' *Medex v. McCabe*, 372 Md. 28, 39, 811 A.2d 297, 304 (2002). *See also State Farm Mut. Auto. Ins. Co. v. Nationwide Mut. Ins. Co.*, 307 Md. 631, 643, 516 A.2d 586, 592 (1986) (holding that a contractual provision that violates public policy is invalid, but only to the extent of conflict between stated public policy and contractual provision). Thus, because the provision of the MOU that states that '[e]ither party may terminate this contract at any time, by giving forty-five (45) days prior written notice to the other' without need to provide cause, conflicts with § 16–5(e) of the Public Local Laws, that provision, pursuant to which the Mayor acted to terminate Clark, is unenforceable."

*Id.* at 33, 944 A.2d at 1133–34.

We affirmed the judgment of the Court of Special Appeals. That court, as we have seen, reversed the judgment of the Circuit Court on the grounds that the Mayor's reliance on Section 12 of the employment contract did not entitle him to judgment as a matter of law. Thus, concluding that "the

---

diate appellate court determined three issues; preliminarily, it determined that there was a final judgment to be reviewed, 169 Md.App. 408, 420, 901 A.2d 279, 286; it then rejected the petitioner's argument that there were issues of material fact to be resolved, *id.* at 425, 901 A.2d at 289, and, finally, it decided that the Mayor was not entitled to judgment as a matter of law on the issue of the applicability of the 'not for cause' provision of the employment contract to the petitioner's dismissal. *Id.* at 438–39, 901 A.2d at 297.

circuit court erred in holding as a matter of law that the entire contract between the parties was valid and enforceable," it remanded the case to the Circuit Court to "consider the additional questions that have been raised by the City, including questions of waiver, estoppel, and damages." *Clark v. O'Malley*, 169 Md.App. at 440, 901 A.2d at 297 *aff'd sub nom. Mayor & City Council of Baltimore v. Clark*, 404 Md. 13, 944 A.2d 1122 (2008). More particularly, with respect to damages, the intermediate appellate court advised:

> "The Mayor argues that 'Paragraph 2B of the contract is a valid and enforceable provision providing for limitation of liability and liquidated damages,' and maintains that Clark has already been paid all the monetary damages to which he is entitled. Because the court ruled that section 12 of the MOU was valid and enforceable, and that Clark had been properly terminated under that provision, it did not address whether section 2.B. limits Clark's claim for damages."

*Id.* at 440 n. 10, 901 A.2d at 297 n. 10.

Armed with the opinion in *Clark II*, Mr. Clark claimed entitlement to, among other things, reinstatement as Police Commissioner of Baltimore City. Accordingly, he filed in the Circuit Court a Motion for Writ of Mandamus or Motion for Injunction for Reinstatement to Office Forthwith.[3] In that motion, referencing counts III and V of his First Amended Complaint, Mr. Clark argued that this Court, in *Clark II*, "ruled unanimously ... that Plaintiff was removed from the Office of Police Commissioner of Baltimore City illegally by Mayor O'Malley," which effectively required the City to reinstate him as police commissioner. For this latter proposition, he relied on *Forami v. Reynolds*, 248 Md. 246, 252–53, 236 A.2d 20, 25 (1967), in which we stated, "the writ of mandamus may issue ... to reinstate a person in office from which he has been illegally removed," and *Field v. Malster*, 88 Md. 691, 705, 41 A. 1087, 1091 (1898), in which this Court ordered an officer illegally removed from office reinstated to his office.

---

**3.** Mr. Clark, immediately upon the filing of the mandate in *Clark II*, moved for issuance of a scheduling order. That motion was denied.

In addition to opposing the petitioner's motion for reinstatement, the respondents moved for summary judgment. In their opposition, they raised the issue of proper parties, noting that the Mayor who removed the petitioner from office was no longer Mayor, but now the Governor, and the petitioner's failure to join his successor as a defendant. From these facts, the respondents argue that the then present Mayor may not be ordered to reinstate a police commissioner, whom she did not discharge, and litigation to determine the rightful occupant of a public office requires that the incumbent in that office be joined as a party, which the petitioner failed to do in this case. The respondents also point to the fact that the petitioner's term—he was filling the unexpired term of the prior commissioner—would expire within a short time after the filing of their opposition, making reinstatement "both pointless and counterproductive," citing *McKeever v. Washington Heights Realty Corp.*, 183 Md. 216, 223–24, 37 A.2d 305, 310 (1944). Finally, relying on *Dept. Of Public Safety & Correctional Svcs. v. Donahue*, 400 Md. 510, 529 n. 7, 929 A.2d 512, 524 n. 7 (2007), which recognizes that "special circumstances" may trump the preferred remedy of the reinstatement of an illegally discharged employee, the respondents maintain that there are such circumstances in this case and that they, "plus Clark's failure to adequately plead and meet the substantive elements of the relief requested warrant dismissal of his claims for reinstatement."

With regard to the motion for summary judgment, the respondents made four arguments. First, characterizing § 2.B. of the MOU[4] as a liquidated damages clause and maintaining its validity, they argued that, as a result, "as a matter of law, Clark is barred from recovering additional

---

4. That section provided:

"If Clark is willing and able to perform employment duties under this Agreement and the employment of Clark is (1) terminated in the Initial Term by City for any reason other than for just cause as defined in Paragraph 2.A.; or (2) in the event Clark is forced to resign following a formal or informal suggestion by the Mayor that he resign; or (3) that Clark's salary is reduced below his present annual

damages in this case." Next, noting that the petitioner "knowingly and voluntarily entered into an employment contract" and for almost 2 years "accepted the substantial benefits of that agreement," the respondents submitted that he is equitably estopped to deny the validity of the contract or to "reap a windfall based upon a claim of illegality in a contract which has been performed and from which they have received benefits." This same conduct, the respondents perceived and thus contended, constituted the waiver by the petitioner of his right to sue for additional damages. Finally, they asserted that the petitioner's breach of contract claim fails as a matter of law.

Subsequently, Mr. Clark moved for partial summary judgment. In that motion, he argued that the issue of liability was conclusively decided, as a matter of law, by Clark II and that, therefore, the only unresolved issue was damages. In that regard, cognizant of the remand and its purpose, *see Clark*, 169 Md.App. at 440 n. 10, 901 A.2d at 297 n. 10, and directing the court's attention to language in Clark II that he believes to be dispositive of that issue:

"[I]t is well settled that, where the General Assembly has announced public policy, the Court will decline to enter the

salary without Clark's written consent; or (4) in the event for any reason whatsoever other than for just cause as above defined the Mayor does not reappoint and the Council confirm the reappointment of Clark to a full six-year term immediately following the Initial Term, City agrees to pay Clark a lump sum payment, as and for additional compensation/severance, equal to 6 months aggregate salary, including retirement benefits calculated as the employer's share of retirement benefits at the time of termination or non-reappointment as defined herein. Clark shall also be fully compensated for any accrued sick leave, vacation, compensatory time and any other accrued benefits at the time of the termination or failure of reappointment. Should Clark not be reappointed or terminated without just cause, Clark agrees that the additional compensation/severance lump sum payment set out above shall satisfy all obligations City has to Clark as a result of the termination/non-reappointment."

public policy debate, even when it is the common law that is at issue and the Court certainly has authority to change the common law."

404 Md. at 36, 944 A.2d 1122, 1135–36, the petitioner submitted:

"The above-quoted (and emphasized) statement from the opinion ... which pronounces the Court's refusal to change the common law even where the Court has the authority to do so, clearly disposes of any alleged outstanding common law issues regarding estoppel and waiver. As opposing counsel and the Court are aware, estoppel and waiver are common law principles .... the Court of Appeals has addressed and disposed of any common law questions of estoppel and waiver as a matter of law and has given an unequivocally firm statement that the Court will not interject itself into those common law questions in the context of a contract provision found to be contrary to public policy.

"Additionally, since the Court of Appeals decided that the termination without cause provision of the Memorandum of Understanding ... is unenforceable and contrary to public policy as a matter of law, any argument by the defense that Plaintiff is barred under principles of estoppel and waiver from arguing that the MOU is unenforceable has been rendered a non-issue.[5] Moreover, '[o]ne cannot be estopped from asserting the unenforceability of a contract

---

5. The Circuit Court was careful to point out that it was not resolving the case on waiver or estoppel, stating:

"In a final footnote to its opinion, the Court of Special Appeals elaborated on its remand order and briefly discussed the competing arguments for and against defendants' claim that Clark waived or is equitably estopped from pursuing his due process violations claims for money damages. Whether those principles are applicable under the circumstances here or not, the question of whether plaintiff may accept the benefits conferred by the MOU for a period of two years and then challenge its validity is a factual one, not properly disposed of on a motion for summary judgment. *Faller v. Faller*, 247 Md. 631, 637, 233 A.2d 807, 810 (1967). Accordingly, the Court is not relying upon these principles in deciding Count VII but rather upon its

which is against public policy and therefore invalid.' *Stanbaugh* [*Stambaugh* ] *v. Child Support Admin.*, 323 Md. 106, 113, 591 A.2d 501, 504 (1991) (and cases cited therein)."

A judge of the Circuit Court for Baltimore City denied Mr. Clark mandamus/injunction motion, rejecting the argument that *Clark II* was dispositive of that issue. Specifically, she pointed out that "nowhere in the Clark opinion or in its mandate does the Court of Appeals order Clark's reinstatement. The Court of Appeals only addressed the legality and effect of the termination provision in the parties' MOU and determined that the Mayor had exceeded the authority particularized in P.L.L. § 16–5(e)" and that this Court affirmed the judgment of the Court of Special Appeals, which included the remand of the case to the Circuit Court for consideration of outstanding issues of "waiver, estoppel and damages." The judge offered other rationales for her decision, some argued by the respondents, the failure to join proper parties, for example: that, given the amount of time remaining in his term, reinstatement would be "a useless and nugatory act," citing *Brown v. Bragunier*, 79 Md. 234, 236, 29 A. 7, 8 (1894); that the petitioner's action for damages was "another available, adequate remedy," citing *Myers v. Chief, Baltimore County Fire Bureau*, 237 Md. 583, 207 A.2d 467 (1965); and, relying on *Kinlein v. Mayor & City Council of Baltimore*, 118 Md. 576, 581, 85 A. 679, 681 (1912), that, "if reinstated, Kevin Clark's term as Police Commissioner would expire on June 30, 2008. Reinstatement for thirteen days or less would surely bring about great and unnecessary disorder and cause inevitable confusion in the operations and administration of the Baltimore Police Department."

Thereafter, another judge of the Circuit Court considered the cross-motions for summary judgment, denying Mr. Clark's motion for partial summary judgment and granting the respondents' motion for summary judgment. With regard to the respondent's summary judgment motion, the court, having

finding that § 2.B. of the MOU is valid and enforceable." (Footnote omitted).

determined that the other claims had been either waived or otherwise disposed of,[6] considered only Count VII of the petitioner's complaint, his state constitutional violation claim for a denial of due process in connection with his firing. Acknowledging that the petitioner had made out a case for denial of due process in violation of a property interest, the court held that § 2.B. of the MOU, which it found to be a liquidated damages clause [7] and "valid and enforceable," limited his claim for compensatory damages. Indeed, the court declared:

---

**6.** The Court rationalized:
"[Mr. Clark's] requests for declaratory relief have been rendered moot as a result of the decision in this case issued by the Court of Appeals on March 20, 2008, and his requests for injunctive relief were denied in a Memorandum and Order issued by Judge Carol E. Smith of this Court on June 17, 2008. Thus, Counts I, II, III, IV, V and VI have been resolved. Counts VIII, IX and X are no longer viable as they were predicated upon alleged breaches of contract for terminating plaintiff without just cause (Counts VIII & IX) and without valid notice (Count X). As to the just cause counts, the defendants have not claimed that they had 'cause' to terminate plaintiff, invoking instead his contract provision, § 12 of the MOU, dated February 2003, which purported to allow the City to terminate Clark without cause upon 45 days notice. It is, of course, this provision which was found by the appellate courts to be violative of the PLL § 16–5(e) and, therefore, unenforceable. *Clark v. O'Malley,* 169 Md.App. 408, 438–439, 901 A.2d 279 (2006), *aff'd by Mayor & City Council of Baltimore v. Clark,* 404 Md. 13, 33, 944 A.2d 1122 (2008). The invalid notice claim set forth in Count X was decided against plaintiff in this Court's Declaratory Judgment of April 4, 2005. The Court of Special Appeals found that Clark had not raised below a genuine issue of material fact regarding notice and left this Court's ruling on that issue undisturbed. *See* 169 Md.App. at 425, 901 A.2d 279. Clark failed to challenge that ruling in his appeals. Therefore, it is precluded from relitigation under the law of the case doctrine."

**7.** We have held that a liquidated damages clause is "a specific sum of money ... expressly stipulated by the parties to a ... contract as the amount of damages to be recovered by either party for a breach of the agreement by the other." *Bd. of Educ. v. Heister,* 392 Md. 140, 155, 896 A.2d 342, 351 (2006). *See Barrie Sch. v. Patch,* 401 Md. 497, 507, 933 A.2d 382, 388 (2007). When such clauses in contracts "are fair and reasonable attempts to fix just compensation for anticipated loss caused by breach of contract, they are enforced." *Heister,* 392 Md. at 156, 896 A.2d 342, 351–52 (quoting *Priebe & Sons, Inc. v. United States,* 332 U.S. 407, 411, 68 S.Ct. 123, 126, 92 L.Ed. 32, 38 (1947)).

"The issue of the continuing validity of the MOU § 2.B was expressly remanded to this Court for determination, in light of the Court of Appeals' careful articulation that a contract provision that violates public policy is invalid only to the extent of conflict between the stated public policy and the contractual provision. *See* 404 Md. at 33, 944 A.2d 1122. The liquidated damages provision presents no such conflict."

Because there was no disputed issue of material fact and the only basis for compensatory damages greater than those already paid—that the Mayor relied on a contractual provision later found to be invalid—is insufficient to support a claim for punitive damages, the court limited the damages to those already paid and granted summary judgment to the respondents. Turning to the motion for partial summary judgment, the court concluded that "The decisions of the Court of Special Appeals and the Court of Appeals did not address this issue [of liability]. They were confined to a finding that the termination provisions of the MOU, §§ 2.A and 12, were unenforceable as in conflict with existing statutory law."

In the Court of Special Appeals,[8] the petitioner made three arguments in challenging the rulings of the Circuit Court: that the court abused its discretion when it denied his motion for writ of mandamus or injunction reinstating him to office; that the court erred in denying his motion for partial summary judgment: and that the court erred in granting the respon-

---

**8.** The respondents cross-appealed. As cross-petitioners, they seek dismissal of the petitioner's appeal, arguing that his claims are barred by res judicata. Relying on *Francis v. Giacomelli*, 588 F.3d 186 (4th Cir.2009), which affirmed the judgment of the United States District Court for the District of Maryland dismissing, on July 16, 2008, federal claims, arising out of the same facts and incident, made by Mr. Clark and two of his command staff in a federal court action, they submit that the petitioner "split his claims regarding the termination of his appointment between state and federal court," which bars his state claims. Although the petitioner resists the respondents' arguments, arguing that "[t]he central thrust of the Petitioner's federal action was an illegal search, seizure, and detention of the Plaintiffs without prior notice and in violation of their federal civil rights," in view of our disposition of the issues raised in this case, we will not consider whether the petitioner's claims are barred by principles of res judicata.

dents' motion for summary judgment. *Clark v. O'Malley,* 186 Md.App. 194, 199, 973 A.2d 821, 824 (2009). The first two arguments were premised on, and, indeed, depended on, the Court of Appeals having determined, on the merits, in *Clark II,* that his termination was unlawful, and, therefore, that he was entitled to reinstatement as Police Commissioner, as a matter of law. His third argument disputed that "the City had tendered a check for the sole damages to which Mr. Clark was entitled pursuant to the MOU." *Id.* at 215–16, 973 A.2d at 833.

The Court of Special Appeals rejected each of the petitioner's arguments. Because his term of employment had expired, it concluded that the petitioner's request for reinstatement was moot. *Id.* at 218, 973 A.2d at 835. In denying the petitioner's motion for partial summary judgment, it concluded that our decision in *Clark II* "did not settle the ultimate question of liability," *id.* at 221, 973 A.2d at 836–37, noting, in support, that the decision it affirmed held that § 12 of the MOU was unenforceable, but it remanded the case to the circuit court to consider questions of waiver and estoppel, as well as "whether section 2.B limited Mr. Clark's claim for damages." *Id.* at 221, 973 A.2d at 836–37, quoting *Clark I,* 169 Md.App. at 440 n. 10, 901 A.2d at 297 n. 10. Thus, the court held that the Circuit Court correctly interpreted our decision as "confined to a finding that the termination provisions of the MOU, §§ 2.A and 12, were unenforceable as in conflict with existing statutory law." *Id.* 186 Md.App. at 221, 973 A.2d at 836–37. With regard to the respondents' motion for summary judgment, the intermediate appellate court rejected the petitioner's "sole argument" against it, that § 2.B violated public policy because it had some relation to "the duration of Mr. Clark's term of office," *id.* at 226, 973 A.2d at 839–40, and essentially adopted the reasoning of the Circuit Court—that § 2.B., which does not conflict with the public policy reflected in P.L.L. § 2–16(e), is a clear, unambiguous and valid liquidated damages clause, which is fully enforceable. *Id.* at 225–26, 973 A.2d at 839. And, because there was no dispute of material fact that the payments required to be

made pursuant to that section were made to the petitioner, the court held that summary judgment was properly entered in favor of the respondents on that point. *Id.* at 226, 973 A.2d at 840.

In this Court, the petitioner presents three questions for our review:

"1. Where the Court of Appeals has determined that an official was illegally removed from his appointed term, may a Circuit Court preclude that official from returning to office for the remainder of the unexpired term?

"2. Was the Court of Appeals holding in *Mayor City Council of Baltimore v. Clark* a final determination of Kevin Clark's violation of right to due process and liability concerning that violation?

"3. Assuming that *Mayor & City Council of Baltimore v. Clark* did not resolve all contractual and liability issues in this case concerning the MOU, were the Respondents entitled to summary judgment?"

The underlying premise of the petitioner's first two arguments is that *Clark II* is dispositive of this case and all of its aspects, that it definitively determined not simply that the petitioner had been wrongly discharged, but also that there was nothing more to decide. As the petitioner sees it, a decision that the petitioner was wrongly discharged necessarily means that the agreement containing the provision determined to be contrary to law, was, itself, in its entirety, invalid and, therefore, the respondents liability also has been established conclusively, without regard to, and in spite of any other issues that might have been presented in the case. This is demonstrated by the caption to the petitioner's first argument, "The Lower Courts Had No Discretion To Deviate from the Court of Appeals' Decision," and confirmed by its first two sentences:

"In *Mayor & City Council of Baltimore v. Clark*, this Court concluded that on November 10, 2004, then Mayor Martin O'Malley broke the law and illegally removed Petitioner, Kevin P. Clark, from office as Police Commissioner

for Baltimore City. The stated basis for the removal, that was accomplished by gunpoint and through the deployment of a police S.W.A.T. unit, was a memorandum of understanding that was contrary to law."

Throughout the remainder of the arguments, as a matter of fact, the petitioner makes clear that it is his interpretation of *Clark II* that "[t]his Court having already ruled that the Mayor removed Petitioner illegally, the factual and legal issues in this case were conclusively determined." Proceeding from this premise, it follows that the petitioner would view any contrary interpretation by the Court of Special Appeals or the Circuit Court as "attempt[s] to evade this Court's finding of illegal conduct by suggesting [that] another mode of discharge was appropriate pursuant to the MOU."

The cases on which the petitioner relies for the proposition that mandamus lies to effect his reinstatement, *Forami v. Reynolds,* 248 Md. 246, 253, 236 A.2d 20, 25 (1967); *Field v. Malster,* 88 Md. 691, 41 A. 1087 (1898); *Miles v. Stevenson,* 80 Md. 358, 30 A. 646 (1894); *Mayor & City Council of Ocean City v. Johnson,* 57 Md.App. 502, 517, 470 A.2d 1308, 1315 (1984), further make the point. In each of these cases, mandamus was sought to effect the reinstatement of a public official to an office from which, it was alleged, he had wrongly and illegally been removed. In each of these cases, what was presented for decision by the appellant court was the merits of the issue on the basis of which the writ of mandamus was sought and found to be warranted. In *Forami,* for example, the Mayor of Capital Heights, Maryland appealed the issuance of a writ of mandamus directing him to reinstate a police officer, whom he had told he was no longer a police officer, notwithstanding that the Common Town Council, as reflected by the minutes of the proceedings, had not voted to remove him, as it had done with respect to one of his fellow officers. *Forami,* 248 Md. at 251, 236 A.2d at 24. While the Mayor was given, by Public Local Law,[9] the power to appoint police

---

**9.** Section 8–19 of the Code of Prince George's County (Everstine Ed.1957) provided:

officers, his appointees could be removed by majority vote of the Common Council and the Mayor.[10] The Mayor did not dispute the occurrence, rather he sought to veto the action of the Common Council and justify his own actions. *Id.* at 249, 236 A.2d at 23. The matter was presented for decision in this posture. This Court, addressing the question of the officer's entitlement to reinstatement, said:

> "We are of the opinion that Sergeant Brommer was entitled to be reinstated in his office. He was duly appointed to his office by the mayor in June, 1966, and this appointment was confirmed by the Town Council at its meeting of June 13, 1966. It is not clear from the ordinance (section 8–19 of the Prince George's County Code already quoted) that he was required to take the oath of office again as he had already taken the oath at the time of his original prior appointment. Assuming, arguendo, that he was required to take the oath again, the duty of the mayor to administer this oath to him was merely ministerial and the mayor may properly be compelled by mandamus to administer the oath as part of the Sergeant's reinstatement. *Spitzer v. Martin,* 130 Md. 428, 100 A. 739 (1917); *Groome v. Gwinn,* 43 Md. 572 (1875).

"There shall be appointed by the Mayor, subject to confirmation by the Town Council at its next meeting, regular or special, one or more persons as bailiffs of said town, whose duty it shall be to preserve the peace and good order of the town, and for this purpose the bailiff or bailiffs are hereby vested with the same power and authority now possessed by constables under the laws of this state.

"The bailiff or bailiffs shall take the required oath and enter upon the duties of their office on the first day of July in each year, or at such time as appointed, but shall not serve beyond the July 1st next following their appointment, unless reappointed and confirmed; provided, however, that nothing in this section shall be construed to affect the appointment or term of office of the bailiffs holding office at the time this section is enacted into law."

**10.** Section 8–48 provided:

"For neglect of duty or incompetency any town agent or official appointed by the Mayor or by the Mayor and Common Council may be removed from office at any time by a majority vote of the Common Council and the Mayor, the Mayor's vote to be equal to that of any one of the members of the Common Council for this purpose."

"Having been validly appointed and confirmed as a police officer, Sergeant Brommer could only be removed from his office as provided in section 8–48 of the Prince George's County Code. No proceedings under this section were filed against him nor has there been a majority vote of the Council to remove him under that section. On the contrary, a motion was approved by the Council at its meeting of July 11, 1966, to reinstate him by a vote of three in the affirmative, one in the negative, one not voting and one absent. Whatever may be the effect of this action, it is clear that there was no vote of a majority of the Council to remove him under section 8–48."

248 Md. at 253–54, 236 A.2d at 25–26. *Mayor & City Council of Ocean City v. Johnson,* 57 Md.App. at 517, 470 A.2d at 1315, is to like effect. There, the question of the invalidity of the regulations and thus their improper enforcement against Johnson, was directly presented, and, so, "his right to reinstatement was not 'doubtful,' and the Chief's obligation was not a discretionary one." *Id.* at 517, 470 A.2d 1315.

Although the petitioner's action included counts for reinstatement to his position and for damages, the posture in which *Clark II* reached this Court was vastly different. The respondents' liability to the petitioner for wrongful discharge was implicated, to be sure; however, what was presented related only to one aspect of liability, not the entirety of the legal and factual issues that were required to be resolved to establish liability, such that reinstatement inexorably would follow. Moreover, *Clark II* must be viewed in the context of the litigation as it proceeded through the appellate process. The Court of Special Appeals did not resolve the issue of the respondents' liability to the petitioner for illegal discharge, although, as the case reached it, the case was ripe for the exoneration of the respondents entirely. Rather, the intermediate appellate court, having concluded that there were no disputed issues of material fact, *id.* at 425, 901 A.2d at 289, determined that the respondents were not entitled to judgment as a matter of law, identifying, as the impediment to that result, a provision in an employment agreement that the

respondents and the petitioner executed that conflicted with, by expanding, the statutory authority given the Mayor, by the General Assembly, to discharge the Baltimore City Police Commissioner. *Id.* at 438–39, 901 A.2d at 297. That court also recognized that its decision was not dispositive of the issues raised by the parties and, so, ordered the remand of the case to the Circuit Court to consider the issues raised, but yet to be resolved. *Id.* at 440, 901 A.2d at 297. One such issue it identified was the relationship of the employment agreement to, and its impact on, the petitioner's litigation challenging his discharge. As the Court of Special Appeals stated, one of the issues was: "whether section 2.B limited Mr. Clark's claim for damages." *Clark I,* 169 Md.App. at 440 n. 10, 901 A.2d at 297 n. 10.

Although the respondents filed a petition for writ of certiorari to challenge the Court of Appeals' determination that they were not entitled to judgment by reason of the contractual provision, significantly, the petitioner did not cross-petition to challenge the necessity for remand or otherwise to clarify that the judgment entered by the intermediate appellate court was a dispositive one insofar as the illegality of his discharge and entitlement to relief were concerned. Thus, the only question on which we granted certiorari and, therefore, on which we opined was, as we have seen, that challenging the propriety of the judgment rendered by the Court of Special Appeals, "whether Kevin Clark is bound by the unambiguous 'right to terminate without cause' provision in the employment contract that he negotiated with the City of Baltimore." *Id.* at 36, 944 A.2d at 1136. We answered that question consistent with the way in which the intermediate appellate court had done. *Id.* at 36, 944 A.2d 1136. Therefore, we affirmed that court's judgment. In so doing, we necessarily endorsed its remand for the consideration of outstanding issues, issues that the Circuit Court did not address because of its grant of summary judgment, including whether § 2.B. of the MOU limited the petitioner's damages claim. That was the extent of this Court's ruling on the issue of the petitioner's entitlement to relief. We clearly did not, as both judges of the Circuit Court

and the Court of Special Appeals, have pointed out, address, not to mention decide, the merits of the petitioner's claims for reinstatement and monetary damages. Far from it, we simply confirmed a ground on which he could prevail and remanded the case for additional action.

As we have seen, the very foundation of the petitioner's argument for reinstatement and for his claim of error in the denial of his motion for partial summary judgment is that this Court reached the merits of his reinstatement claim and decided it in his favor. Indeed, his argument rises or falls on that premise. Because, as the foregoing demonstrates, neither this Court nor the Court of Special Appeals reached the merits of his claims or purported to do so and neither decision had the effect of doing so, we hold that the petitioner was not entitled to reinstatement or, as the petitioner maintains, to judgment as a matter of law.[11]

The petitioner argues that, even if *Clark II* did not resolve the issue of liability, the Court of Special Appeals and the Circuit Court below should not have denied Mr. Clark's requests for mandamus and partial summary judgment. With respect to the former, he submits that the Circuit Court abused its discretion when, despite "[t]his Court [having] unequivocally established that Mr. Clark had not been afforded due process protection prior to his removal as Police Commissioner and that his removal pursuant to an MOU was illegal and unenforceable," it denied his mandamus petition.

---

**11.** As we have seen, the Court of Special Appeals held that the petitioner's reinstatement claim was moot, *Clark v. O'Malley,* 186 Md.App. 194, 217, 973 A.2d 821, 834–835 (2009) citing *Nat'l Collegiate Athletic Assoc. v. Tucker,* 300 Md. 156, 158–159, 476 A.2d 1160, 1160–61 (1984); *County Comm'rs of Charles County v. Sec'y of Health & Mental Hygiene,* 302 Md. 566, 567, 489 A.2d 1127, 1127–28 (1985). "A case is moot when there is no longer an existing controversy between the parties at the time it is before the court so that the court cannot provide an effective remedy." *In re Joseph N.,* 407 Md. 278, 301, 965 A.2d 59, 72 (2009) (quoting *Coburn v. Coburn,* 342 Md. 244, 250, 674 A.2d 951, 954 (1996)). We do not disagree. *See Armstrong v. Mayor of Baltimore,* 409 Md. 648, 674, 976 A.2d 349, 365 (2009); *Suter v. Stuckey,* 402 Md. 211, 219–20, 935 A.2d 731, 736 (2007); *Dep't of Human Res. v. Roth,* 398 Md. 137, 143, 919 A.2d 1217, 1221 (2007).

He also faults the Circuit Court for, by that same action, ignoring the law of the case doctrine and reinterpreting the MOU to circumscribe this Court's opinion by determining that not all of the MOU's provisions were invalid.[12] By so doing, the petitioner complains that both "[t]he Circuit Court and the Court of Special Appeals ignored the illegality of the act by the Respondents and focused instead on a questionable theory of alternative termination under § 2.B. of the MOU." Finally, he asserts that the Circuit Court ignored his clear right to be reinstated to his unexpired term, contending that its conclusion, premised, in part, on the failure to join necessary parties to the litigation, that reinstatement would be "useless or nugatory" "was mere speculation," not supported by a factual basis established at the hearing.

Concerning his entitlement to partial summary judgment, the petitioner contends that there are issues of fact in dispute, namely those involving liability and the interpretation of the MOU. One such dispute, he suggests, is that concerning the Circuit Court's "reinstatement of the contract," as well as the application of § 2.B., "the so-called liquidated damages provision," to the petitioner's action against the respondents. In

---

12. The petitioner has reference to this Court's statement, in *Clark II*, that "The removal power, as articulated in § 16–5(e), we hold, is not modifiable by a MOU, and, in particular, the contractual language at issue in the case sub judice." 404 Md. at 33, 944 A.2d at 1133–34. In addition to the limiting language contained in that statement itself, we made clear, in the very next sentence, as the Circuit Court recognized, and stated, that "a contract conflicting with public policy set forth in a statute is invalid to the extent of the conflict between the contract and that policy." *Id.*, citing *Medex v. McCabe*, 372 Md. 28, 39, 811 A.2d 297, 304 (2002) and *State Farm Mut. Auto. Ins. Co. v. Nationwide Mut. Ins. Co.*, 307 Md. 631, 643, 516 A.2d 586, 592 (1986) (holding that a contractual provision that violates public policy is invalid, but only to the extent of conflict between stated public policy and contractual provision). That it was § 2.B. that was the offending provision was made clear without doubt when we concluded: "Thus, because the provision of the MOU that states that '[e]ither party may terminate this contract at any time, by giving forty-five (45) days prior written notice to the other,' without need to provide cause, conflicts with § 16–5(c) of the Public Local Laws, that provision, pursuant to which the Mayor acted to terminate Clark, is unenforceable." *Id.* at 33, 944 A.2d at 1133–34.

that regard, the petitioner proffers that the Circuit Court opinions "presumed" a meeting of the minds on that issue when the record failed to show that it occurred. As he did before the Court of Special Appeals, the petitioner argues that it should not be accepted as a fact that the payments "tendered" to him met the City's obligations under that section of the MOU.

 Summary judgment practice in this state is governed by Maryland Rule 2–501. It provides, as relevant:

> "(f) Entry of Judgment. The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law ..."

Under Maryland law, the non-movant bears no burden of proof at the summary judgment stage. Rather, after the moving party has produced sufficient evidence in support of summary judgment, the non-movant "must demonstrate that there is a genuine dispute of material fact by presenting facts that would be admissible in evidence." *Gross, supra,* 332 Md. at 255, 630 A.2d at 1160; see also *Rite Aid Corp. v. Hagley,* 374 Md. 665, 684, 824 A.2d 107, 118 (2003); *Grimes v. Kennedy Krieger Inst., Inc.,* 366 Md. 29, 73, 782 A.2d 807, 834 (2001); *Beatty, supra,* 330 Md. at 737, 625 A.2d at 1011. Indeed, Maryland Rule 2–501(b) provides:

> "(b) Response. A response to a written motion for summary judgment shall be in writing and shall (1) identify with particularity each material fact as to which it is contended that there is a genuine dispute and (2) as to each such fact, identify and attach the relevant portion of the specific document, discovery response, transcript of testimony (by page and line), or other statement under oath that demonstrates the dispute. A response asserting the existence of a material fact or controverting any fact contained in the record shall be supported by an affidavit or other written statement under oath."

Those facts in dispute must be presented "in detail and with precision," general allegations are insufficient. *O'Connor v. Baltimore County,* 382 Md. 102, 111, 854 A.2d 1191, 1196 (2004); see also *Appiah v. Hall,* 416 Md. 533, 546–47, 7 A.3d 536, 544 (2010); *Lynx, supra,* 273 Md. at 7–8, 327 A.2d at 509. Finally, in determining whether there is a genuine dispute of material fact, the court must resolve all inferences against the moving party. *Appiah, supra,* 416 Md. at 546, 7 A.3d at 544; *O'Connor, supra,* 382 Md. at 111, 854 A.2d at 1196; *Gross, supra,* 332 Md. at 256, 630 A.2d at 1160; *Coffey, supra,* 291 Md. at 246, 434 A.2d at 567; *Berkey, supra,* 287 Md. at 304–05, 413 A.2d at 171; *Leonhart v. Atkinson,* 265 Md. 219, 220, 289 A.2d 1, 2 (1972). "A material fact is a fact the resolution of which will somehow affect the outcome the case." *King,* 303 Md. at 111, 492 A.2d at 614–615 (citing *Lynx, supra,* 273 Md. at 7–8, 327 A.2d at 509).

■ The petitioner filed a response in opposition to the respondents' motion for summary judgment. In that motion, he continued to emphasize his belief that *Clark II* was conclusive of the issue, that it had already disposed of all of the issues relevant to his reinstatement. Then, assuming that *Clark II* was not conclusive, he also identified issues that he believed to be in dispute, most notably, the ambiguity of the employment agreement, by "both incorporat[ing] the § 16–5(e) and seek[ing] to evade § 16–5(e) by providing authority to the Mayor to remove the Police Commissioner for something outside the criteria of § 16–5(e)." Responding to the respondents' liquidated damages argument, the petitioner claims that *Clark II* decided the common law defenses related to the employment contract. To the respondents' arguments that judgment in their favor is warranted because the employment agreement did not require the use of § 16–5(e), that termination "for cause" is now inapplicable and that, notwithstanding the invalidity of the "not for cause" option, the petitioner was nevertheless timely notified in accordance with the employment, he responds simply that they should be rejected. The petitioner's affidavit disputes certain assertions made in an affidavit filed by the City Solicitor regarding discussions

about the petitioner's service prior to November 10, 2004 and includes emails between the petitioner and the former Mayor.

From the foregoing, it is obvious that the petitioner, did not identify with particularity, either in his response or his brief, each material fact as to which he contended that there is a genuine dispute and that, as to none of the facts that he identified did he "attach the relevant portion of the specific document, discovery response, transcript of testimony (by page and line), or other statement under oath that demonstrates the dispute." Md. Rule 2–501. It follows that the Court of Special Appeals did not err in granting the respondents' summary judgment motion and denying the petitioner's motion for partial summary judgment.

## Motion to Intervene

■ During the pendency of the proceedings between the petitioner and the respondents, the respondents moved to seal confidential documents concerning the petitioner from the Family Court of New York, which they were going to use to support their opposition to the petitioner's motion for reinstatement. Natasha Clark, the wife of the petitioner, filed a motion to intervene, noting that the records to be sealed are protected from disclosure and her interest in protecting their confidentiality. After a hearing on the respondents' motion for summary judgment, the petitioner's motion for partial summary judgment, and Mrs. Clark's motion to intervene, the Circuit Court granted the respondent's summary judgment motion, denied the petitioner's motion for partial summary judgment, and denied, as moot, the motion to intervene. Mrs. Clark noted an appeal to the Court of Special Appeals, which affirmed. *Clark,* 186 Md.App. at 228, 973 A.2d at 841.

In this Court, Mrs. Clark, argues that the Circuit Court erred in denying her motion to intervene. She alleges that her interest is in sealing evidence that the respondents sought to introduce in opposition to Mr. Clark's motion for mandamus or injunctive relief. The evidence that she sought to seal included records from New York state court. Mrs. Clark argues that right to intervene in the present litigation stems

from her right to protect the privacy of information in documents obtained from the family law courts of New York.

The respondents contest Mrs. Clark's intervention in the law suit. They argue that Mrs. Clark has failed to identify how her interest in protecting the confidentiality of her family court records was not already protected by the existing parties. They maintain further that the City was protecting her interests when it sought to seal the records and, to prevent public disclosure, introduce them under seal and that Ms. Clark failed to "assert that Kevin Clark could not adequately represent her interests with respect to the motion."

> Resolving this issue, the Court of Special Appeals opined: "[T]he procedural posture of this case makes the issue moot. At this point in the proceedings, an order has been entered sealing the records from public disclosure. Pursuant to Md. Rule 16–1005(a), "[a] custodian shall deny inspection of a case record or any part of a case record if inspection would be contrary to," among other things, "[a]n order entered by the court having custody of the case record." As the Committee Note to this Rule explains, "[s]o long as a court record is under seal or subject to an order precluding or limiting disclosure, it may not be disclosed except in conformance with the order." (Emphasis added).
>
> "Thus, it appears that, at this point, Ms. Clark's interest in protecting the confidentiality of the New York records has been satisfied. Moreover, because we are affirming the circuit court's order granting summary judgment in appellees' favor, absent a further appeal, there will be no trial and the records will not be introduced into evidence in this case. Therefore, the issue of whether Ms. Clark is entitled to intervene is moot. *See In re Joseph N.*, 407 Md. at 301, 965 A.2d [at] 72 ('a case is moot when there is no longer an existing controversy between the parties at the time it is before the court so that the court cannot provide an effective remedy'). Accordingly, we dismiss Ms. Clark's appeal."

*Clark*, 186 Md.App. at 227–28, 973 A.2d at 840–41.

We agree.

JUDGMENT AFFIRMED, WITH COSTS.